UNITED STATES of America, Plaintiff–Appellee,

v.

Karen CAMERON, Defendant–Appellant.

No. 88–3816.

United States Court of Appeals, Eleventh Circuit.

Aug. 1, 1990.

Theda R. James, Asst. Fed. Public Defender, Tampa, Fla., for defendant-appellant.

Gregory Miller, Asst. U.S. Atty., Tampa, Fla., Robert J. Erickson, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CLARK and EDMONDSON, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

## I. INTRODUCTION

Appellant raises two issues warranting discussion. First, appellant claims that the district court abused its discretion in prohibiting her from raising an insanity defense because she allegedly failed to give notice of her intent to raise such a defense under Federal Rule of Criminal Procedure 12.2(a). Second, appellant argues that the district court incorrectly prohibited her from introducing evidence relating to a "diminished capacity"[1] defense.[2]

We find that under the unique circumstances of this case the district court abused its discretion in prohibiting appellant from raising an insanity defense. The district court did not err, however, in prohibiting the introduction of unarticulated, general psychiatric evidence of mental abnormality in order to negate specific intent.

### A. *Procedural History Relating to the Insanity Defense.*

On November 13, 1987, Appellant Cameron was charged with participating in a conspiracy to distribute in excess of five grams of "crack" cocaine, in violation of 21 U.S.C. § 846, and with the distribution of five grams or more of "crack" cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and 18 U.S.C. § 2.

On November 25, 1987, defendant filed a "Notice of Intent to Rely on Expert Testimony of Defendant's Mental Condition" pursuant to subsection (b) of Federal Rule of Criminal Procedure 12.2. Ms. Cameron admits that she did not, at that time, give notice under subsection (a) of Rule 12.2.[3]

---

1. Confusion surrounds the precise meaning of the term "diminished capacity." *See infra* at 1060–63. We will attempt to define at page 1063, the specific type of evidence that appellant sought to introduce at trial.

2. Appellant-defendant's third claim is that the trial court erred in denying her motion to dismiss the indictment in this case for government misconduct. The facts relating to this claim were fully developed at a pretrial evidentiary hearing. It involves certain contacts between appellant and one Detective Angol after counsel had been formally appointed for appellant but prior to her first contact with a lawyer.

The district court found that Detective Angol did not initiate the contact with the defendant. In any event, the government agreed not to use any of the statements given by the defendant to Detective Angol and the defendant failed to demonstrate to the district court or this court that she suffered any prejudice as a result of those communications; thus, the claim is without merit.

3. Appellant's November 25, 1987, motion read as follows:

> Defendant, Karen Cameron, pursuant to Rule 12.2(b) of Federal Rules of Criminal Procedure, sets forth the following averments:
>
> Defendant intends to introduce expert testimony relating to the mental disease or defect or any other mental condition of defendant bearing upon the issue of guilt.
>
> MEMORANDUM
>
> Rule 12.2(b) permits the filing of such notice within the time provided for the filing of pretrial motions or at such later time as the court may direct.
>
> The defendant herein has filed a written waiver of speedy trial and the government

On December 1, 1987, the district court granted Ms. Cameron's motion to postpone her trial until March 10, 1988.[4]

On December 3, 1987, the government filed a demand for reciprocal discovery in which it sought the results of all mental examinations that the defendant planned to introduce at trial. The government's motion stated, *inter alia*, that it had become "apparent" that the defendant would at trial "rely on expert testimony relating to a mental disease."

The government filed a second motion on December 3, 1987, seeking to compel appellant to submit to a psychological examination at the Medical Center for Federal Prisoners ("MCFP") at Springfield, Missouri. The examination was necessary, according to the government, to "establish that defendant was sane at the time of the charged offense," in the event that "the defense attempts to raise an affirmative defense" and "[under the assumption that] such testimony should entitle defendant to [a] jury resolution of her sanity."

The district court granted the government's motion but appointed a local psychiatrist, Dr. Arturo Gonzalez, to examine Ms. Cameron. The district court specifically requested that Dr. Gonzalez determine whether the defendant was (1) mentally competent to stand trial, and (2) legally sane at the time she allegedly committed the offense charged. *See* 18 U.S.C. § 17(a). In a report dated January 13, 1988, Dr. Gonzalez found Ms. Cameron competent to stand trial. Despite the district court's explicit request that he do so, Dr. Gonzalez did not, however, make any findings regarding the appellant's mental health at the time she allegedly committed the charged offenses.

On February 1, 1988, appellant filed a motion for a pretrial ruling on whether certain evidence of her "diminished capacity" would be admissable at trial, *"[i]n addition to [her] defense of insanity."* (Emphasis added.) On March 3, 1988, the government responded to appellant's motion. Although it argued against the admissibility of "diminished capacity" evidence, the government made no objection to defendant's written notice of her intent to rely upon an insanity defense contained within her February 1, 1988, motion—nearly six weeks prior to the date set for trial (March 10, 1988), and several months after the above-described events.

In an unrelated maneuver, on March 2, 1988, appellant made a motion for hospitalization pursuant to 18 U.S.C. § 4244. In essence, appellant sought a hearing pursuant to 18 U.S.C. § 4247(d) to determine whether she would be eligible for hospitalization rather than incarceration in the event that she was found guilty at trial.[5] The motion for hospitalization stated that Ms. Cameron had been (1) medically discharged from the military in 1977 and diagnosed as schizophrenic, (2) diagnosed schizophrenic again in 1986 by a psychiatrist in a veteran's administration hospital, and (3) was receiving outpatient treatment of an undisclosed nature from the psychiatric unit of a veteran's administration hospital during at least some of the time she allegedly committed the crimes charged.

On March 9, 1988, the government filed a motion *in limine* to prohibit the defendant from presenting evidence of insanity because (1) there was "nothing described in the medical reports, notes or hospital records (that were disclosed to the government) that, even viewed most favorably to the defendant, would constitute a mental disease or defect within the meaning of 18 U.S.C. § 17(a)"; and (2) "[t]he defendant

will not be prejudiced by the defendant's failure to file this notice during the time provided for the filing of pretrial motions.

4. Dr. Mimi Phillips, a clinical therapist who had treated the defendant during a period of time covered in the Indictment, was recuperating from major surgery.

5. On March 8, 1988, the government quite correctly objected to the motion for hospitalization as premature since a defendant's right to hospitalization rather than incarceration attaches, if at all, only *after* that defendant has been convicted of the underlying offense. Counsel for appellant admitted in a hearing before the district court on March 10, 1988, that her motion was not timely.

ha[d] not filed notice of her intent to rely upon an insanity defense as required by Rule 12.2(a)." Various filings by the government disclose its awareness that Cameron intended to introduce evidence of mental impairment.

The government also argued, as it had in response to Ms. Cameron's February 1st motion, that the Insanity Defense Reform Act of 1984 precluded the defendant from presenting "diminished capacity" evidence at trial.

The case proceeded to trial on March 10, 1988, at which time co-defendants Edward and Suzanna Burgess moved for a severance on the ground that defendant Cameron's insanity and/or "diminished capacity" defense would prejudice them. The district court denied the motion for severance and stated that "defendant Cameron's intentions in that regard [*i.e.*, to present a defense based upon mental impairment] have been manifest for some period of time.... I see no reason why such a motion could not or should not have been filed long before this."

The district court also granted both of the government's requests for exclusion. The court prohibited defendant Cameron from relying upon an insanity defense because she had failed altogether, according to the court, to provide notice of her intention to rely on an insanity defense as required by Rule 12.2(a). No mention was made by the district court of defendant's written notice in her February 1st motion of an intent to rely upon an insanity defense.

On March 11, 1988, Ms. Cameron entered a conditional guilty plea, reserving her right to appeal the district court's decisions on both issues.

### B. *Procedural History Relating to "Diminished Capacity" Evidence.*

As mentioned, appellant first sought a judicial ruling on the admissibility of her "diminished capacity" defense on February 1, 1988. Appellant explained in her motion that, aside from presenting an insanity defense, she planned to introduce evidence of "diminished capacity"—*not* as an affirmative defense, but as an attack on the prosecution's necessary claim that she entertained a specific intent to distribute "crack" cocaine or enter into a conspiracy to do so. Nowhere in her pleadings or in arguments before the district court, however, did appellant describe the specific nature of this psychological evidence; or how this evidence would provide a legally acceptable theory that she did not intend to distribute "crack" cocaine.[6]

On appeal, however, appellant provided a slightly more specific but nonetheless vague explanation of the nature of her "diminished capacity" evidence:

[T]he defense sought to introduce evidence which would demonstrate that defendant's mental condition *rendered her incapable of forming* the specific intent necessary to commit the crimes charged in the indictment.

\* \* \* \* \* \*

Defendant Cameron was entitled to have her mental defect considered on the issue of whether she possessed *the mental capacity to form the specific intent* necessary to commit the crimes charged in the indictment.

---

**6.** Appellant made only two arguable references to the availability of expert testimony regarding her "diminished capacity." In the latter part of the March 10, 1988, her counsel contended that Ms. Cameron should be given the opportunity to present "diminished capacity" evidence and made passing reference to medical reports indicating that Ms. Cameron had been diagnosed as schizophrenic, and that during the course of a child custody proceeding a physician stated that Ms. Cameron should not be given custody of her child until she received psychiatric treatment. Also, as discussed in the text above, appellant

referred in the March 2, 1988 motion for hospitalization to her diagnosis as a schizophrenic in 1977 and 1986, and offered a prediction that "[e]xpert and lay testimony offered at the time of trial will establish defendant's long history of mental illness."

These vague and sporadic explanations of the nature of the mental impairment testimony to be offered by appellant, some of which were obviously directed toward her proposed insanity defense, constitute the only explanations or offers of proof specifically related to Ms. Cameron's intent to distribute "crack."

Appellant's Brief at 20, 22 (Emphasis added.)

## II. DISCUSSION

### A. *Abuse of Discretion Standard Applies to Rule 12.2(a) Decisions.*

■ A district court's refusal to excuse a defendant from compliance with Rule 12.2(a) "for cause shown" is reviewable under an abuse of discretion standard. *See, e.g., United States v. Cox,* 826 F.2d 1518, 1522–1523 (6th Cir.1987) (collecting cases), *cert. denied,* 484 U.S. 1028, 108 S.Ct. 756, 98 L.Ed.2d 768 (1988).

Under our view of the facts of this case the question is not whether the district court abused its discretion in denying appellant relief for her failure to give notice under Rule 12.2(a) altogether; the question is whether, under the unique facts of this case, the district court incorrectly failed to recognize that appellant satisfied Rule 12.2(a)'s notice requirement at a stage of the proceedings which the court should have deemed timely. The abuse of discretion standard also applies to the determination of whether notice under Rule 12.2(a) is timely.[7]

### B. *Applying the Abuse of Discretion Standard to the Facts.*

■ Appellant argues that this court should find that the district court abused its discretion because (1) defendant gave notice under subdivision (b) of Rule 12.2; (2) the facts disclose that the government knew that appellant would raise an insanity defense; and (3) the government suffered

no prejudice from the failure to give notice under subdivision (a) rather than subdivision (b).

Rule 12.2(b) reads as follows:

(b) **Expert Testimony of Defendant's Mental Condition.** If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

The government contends that compliance with subdivision (b) of Rule 12.2 does not satisfy the distinct requirements of subdivision (a):

As the Advisory Committee's Notes to Rule 12.2(a) state, the term "defense of insanity" as used in that subsection "has a well understood meaning" that is different that (sic) the more amorphous "other mental condition ... bearing upon the issue of guilt" language contained in Rule 12.2(b).

Appellee's Brief at 15. Notice of an intention to rely on expert testimony regarding a defendant's "mental condition" would not necessarily mean, the government argues, that the defendant intends to raise an insanity defense.[8] The fact that Ms. Camer-

---

7. Pertinent portions of Rule 12.2(a) help explain why the abuse of discretion standard applies to the facts as we interpret them:

(a) **Defense of Insanity.** If a defendant intends to rely upon the defense of insanity at the time of the alleged offense, the defendant shall, *within the time provided for the filing of pretrial motions or at such later time as the court may direct,* notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. (Emphasis added.) The purpose of Rule 12.2 "is to give the government time to prepare to meet the [insanity] issue, which will usually require reliance upon expert testimony." Fed.R.Crim.P. 12.2 advisory committee's note. The district

court retains wide latitude in setting the time period for filing pretrial motions. *See* Fed.R. Crim.P. 12(c).

8. While we agree with the government that a defendant could intend to rely upon expert psychiatric testimony without raising the insanity defense, see the discussion at page 31 and footnote 26, this argument conflicts with the government's position that the Insanity Defense Reform Act of 1984 bars the use of psychiatric testimony unless admitted in conjunction with an insanity defense. If, as the government contends, the Act bars such psychiatric evidence except to support an insanity defense, then notice under Rule 12.2(b) would necessarily and

on herself sought to introduce expert testimony regarding her insanity defense *and* her lack of specific intent to distribute "crack" is strong evidence in favor of the government's position.

Finally, the government contends that it makes no difference whether the prosecution was or was not prejudiced by the failure to give specific notice under Rule 12.2(a) since subdivision (a) makes no distinction on the basis of the government's preparedness to meet an insanity defense. *See Cox,* 826 F.2d at 1523.

 Under our interpretation of the facts, however, we need not decide whether, in the absence of prejudice to the government, notice under subdivision (b) satisfies the requirement of subdivision (a). Even if the Rule 12.2(b) notice appellant submitted on November 25, 1987—some three and one-half months before trial—does not satisfy the notice requirements of subdivision (a), the government admits in its brief that on February 1, 1988—nearly five weeks before trial was set to begin—appellant gave explicit notice in her motion for a pretrial ruling on the admissibility of "diminished capacity" evidence that she in-

tended to rely upon an insanity defense at trial.[9] *See* Appellee's Brief at 4.

In its response to defendant's February 1st motion, the government urged the court to deny all aspects of the motion. In doing so, the government plainly acknowledged that defendant's February 1st motion provided explicit notice of an intent to rely upon an insanity defense. Rule 12.2(a) provides that "[i]f a defendant intends to rely upon the defense of insanity ... the defendant shall ... notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk." Appellant sent her February 1st motion to the attorney for the government and filed it with the clerk of the district court. Under the facts of this case, such an announcement satisfies the substantive notice requirements of Rule 12.2(a).[10]

 The only remaining inquiry under Rule 12.2(a) is whether the February 1st notice of her intent to rely upon an insanity defense, coming as it did nearly five weeks before the date set for trial and after the government had secured a psychiatric examination of the defendant, was within "such later time [for pretrial motions] as the court may [within its discretion] di-

---

unambiguously signify the defendant's intent to raise an insanity defense.

**9.** In her February 1st motion, defendant stated: "*In addition to [her] defense of insanity,* the defendant is entitled to offer proof to negate an essential element of the offense." (Emphasis added.) Appellant also distinguished her insanity defense as "an affirmative defense" or "claim of justification or excuse," as opposed to her "diminished capacity" defense, which she argued is a "claim that [the defendant] is *not* guilty of the crime charged because [the defendant] did not possess the requisite *mens rea.*" (Emphasis added.) Finally, Ms. Cameron sought to establish the propriety of introducing, *inter alia,* medical records and lay testimony regarding her sanity. She gave notice on November 25, 1987, that she intended to rely upon expert psychiatric testimony.

**10.** The government complains in its brief that even if notice under 12.2(b) were adequate to satisfy 12.2(a) as a technical matter, such notice would be insufficient to give the government the more detailed notice contemplated under subdivision (a). This same criticism applies to the explicit but terse notice given to the government in appellant's February 1st motion, wherein she

simply stated without elaborating that she sought to rely upon a "diminished capacity" defense *in addition to* her insanity defense.

We reject the government's argument for a more detailed notice of intent to rely upon an insanity defense. By its very terms, Rule 12.2(a) requires only that the defendant notify the attorney for the government of the defendant's "intention" "to rely upon the defense of insanity at the time of the alleged offense."

The fact that Rule 12.2(a) fails to require a detailed description of the defendant's evidence of insanity does not affect any obligation the defendant may have to proffer specific evidence of insanity for other reasons. For example, a specific proffer might be necessary if the government, as it did in this case, seeks to foreclose the presentation of an insanity defense because there is insufficient evidence of mental disease or defect. Second, a specific proffer on the record regarding expert testimony is often necessary to establish a sufficient predicate for reversal by an appellate court—regardless of the district court's ground for prohibiting such evidence. *See* discussion in the text at 15–16. There may be other circumstances under which a defendant must disclose more details regarding her proposed evidence of insanity.

rect." As we have observed, the district court has broad discretion in determining the time period for filing pretrial motions. *See* Fed.R.Crim.P. 12(c).

The government made no objection on the basis of timeliness to appellant's February 1st notice. The district court did not rule that such notice was outside of the time set for filing pretrial motions of this type. Appellant's February 1st motion was itself a "pretrial" motion; thus, our reading of the record indicates that the time for filing such motions had not expired.[11]

■ Even if the time for filing such motions had expired, however, we find that because the government (1) was clearly aware for over two months prior to February 1st that appellant would present an insanity defense for reasons unrelated to the notice given under 12.2(b), (2) had been granted a motion to compel the defendant to submit to a psychological evaluation specifically for determining sanity at the time of the offense charged, and (3) was given explicit notice nearly five weeks before trial of the defendant's intent to rely upon an insanity defense under Rule 12.2(a), the district court abused its discretion in implicitly finding such notice untimely.[12]

### C. *Prejudice Vel Non.*

■ A showing that the district court erred or abused its discretion in excluding evidence does not lead automatically to a reversal. "Such orders will not be disturbed except upon a showing of abuse of discretion, and then *only upon a showing that such abuse of discretion resulted in substantial harm* to the part[y] seeking relief." *Edward Leasing Corp. v. Uhlig & Associates, Inc.*, 785 F.2d 877, 881 (11th Cir.1986) (orders relating to discovery) (ci-

tations omitted) (emphasis added). As we stated in *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir.1984):

> Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties. Fed.R.Evid. 103; Fed.R.Civ.P. 61. The burden of demonstrating that substantial rights were affected rests with the party asserting error. *Liner v. J.B. Talley & Co.*, 618 F.2d 327, 329 (5th Cir.1980).

*See McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553, 104 S.Ct. 845, 848, 78 L.Ed.2d 663 (1984) (harmless error rules adopted by Supreme Court and Congress "embody the principle that courts should exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial") (citation omitted).

■ A necessary corollary to the harmless error doctrine is that when a federal trial court prohibits the introduction of certain evidence, the party suffering the adverse ruling should see to it that the substance of such evidence is placed on the record—even if the district court's exclusion of the evidence does not relate to its substance or sufficiency.

An offer of proof is essential to alert the trial judge to the possibility and consequences of an evidentiary error. Absent a sufficient proffer, a reviewing court will find it difficult or impossible to evaluate whether, for example, an error in applying Rule 12.2(a) was harmless or not. In this case, appellant made no formal offer of proof regarding the excluded testimony.

■ We would be hard-pressed to find prejudice merely upon the defendant's allegations on appeal that she *would have*

---

11. We note that on December 3, 1987, the government moved to strike appellant's notice of intent to rely upon expert testimony under subsection (b) of Rule 12.2, which was filed November 25, 1987. In its motion to strike, the government stated that on October 7, 1987, a magistrate granted 14 days within which to file motions in the case. Thus, argued the government, the November 25, 1987, notice under Rule 12.2(b) was filed out of time.

 Our reading of the record indicates that the district court did not issue a formal ruling on

the government's motion to strike, but it is clear that the district court granted a continuance in the case and did not strike the 12.2(b) notice as untimely. It is also clear that both sides filed several other pretrial motions without objection well after the 14-day limit.

12. We stress that our decision does not turn solely on the government's lack of prejudice in this case. Our decision turns on the combination of factors discussed in the text.

presented competent and sufficient evidence of mental disease or defect to satisfy the definition of insanity in 18 U.S.C. § 17(a). Appellant did however make a formal offer of proof regarding psychiatric evidence of insanity through her March 2, 1988, motion for hospitalization. That motion and various other isolated portions of the record suggest that appellant would have presented evidence that she was diagnosed as an undifferentiated schizophrenic in 1977 upon her medical discharge from the military, that she had been diagnosed as schizophrenic in 1986, and was at the time of the offense receiving treatment as an outpatient through the psychiatric unit of a veterans administration hospital.

While the record evidence supporting a prejudice finding by this court is sporadic and leaves much to be desired,[13] our review of the record in this case leaves us unwilling to hold that appellant did not suffer prejudice when the district court incorrectly ruled that she failed to give Rule 12.2(a) notice.[14]

D. *The District Court's Decision to Disallow the Admission of "Diminished Capacity" Evidence.*

In addition to prohibiting the presentation of an insanity defense, the district court also ruled that Insanity Defense Reform Act of 1984 precluded appellant from presenting evidence of "diminished capaci-

ty." The district court's decision presents two distinct questions. First, whether Congress eliminated the use of psychiatric evidence to demonstrate a lack of specific intent and, if not, whether the district court erred in excluding the particular psychiatric evidence offered in this case. The application of the Act to the use of "non-insanity"[15] psychiatric evidence of mental impairment presents a question of first impression in this circuit.

The government argues that the Insanity Defense Reform Act of 1984, Pub.L. No. 98–473, Title II, § 402(a), 98 Stat. 2057, § 20, *recodified at* 18 U.S.C. § 17, prohibits the admission of psychiatric evidence offered to negate an element of the crime, and limits the use of such evidence to the jury's consideration of a defendant's legal sanity or insanity (and only when the defendant complies with all of the procedural requirements of raising such a defense).

We disagree, and hold that while Congress clearly meant to circumscribe carefully the use of psychiatric evidence both as it relates to legal excuse *and* to legal guilt or innocence, Congress did not bar the use of psychiatric evidence to negate specific intent when such is an element of the offense charged. The government maintains that even if Congress did not entirely eliminate the use of psychiatric evidence to negate specific intent, this court should uphold the district court's decision to pro-

---

**13.** The motion for hospitalization was almost "accidental" since the defendant should have filed it only *after* she was adjudged guilty of the offense charged. Likewise, appellant's June 6, 1988, amended motion for an evidentiary hearing, in which defendant outlined her psychiatric evidence, did not relate to the strictly evidentiary questions that are the subject of this appeal. Both motions were fortuitous opportunities utilized by appellant to present an explanation of the mental impairment evidence she could have introduced at trial. Nevertheless, these formal submissions were adequate to alert the trial judge to the consequences of the decision to deny Cameron the opportunity to present an insanity defense.

**14.** We note that nothing in our decision today precludes the district court from finding on remand that, as the government argued in its motion *in limine,* there is insufficient evidence of mental disease or defect to present an insanity defense to a jury. The determination on this

issue can only be made, however, after the district court conducts a hearing in which both sides are given the opportunity to argue this issue. The evidence that Cameron has been diagnosed as suffering from schizophrenia at various times in her life does not necessarily mean that she was legally insane either at those times or during the time period over which she allegedly committed the crimes charged. Nevertheless, the proffer of such evidence is sufficient to show that had the trial court not erred in denying Cameron the opportunity to present an insanity defense under Rule 12.2(a), the evidence of her schizophrenia and mental impairment was sufficient to require a more probing inquiry into the government's alternative ground for denying the presentation of an insanity defense.

**15.** By "non-insanity" psychiatric evidence we refer generally to all psychiatric evidence not offered strictly in conjunction with an insanity defense.

hibit appellant's unspecified "diminished capacity" evidence under the circumstances of this case. For the reasons set forth below, we agree.

The issue of whether the Insanity Defense Reform Act abolished the use of psychiatric evidence to negate specific intent is a question of law which we review *de novo*. The question of whether the district court properly excluded the specific psychiatric evidence alluded to by appellant in this case, is subject to the abuse of discretion standard. *See United States v. Twine*, 853 F.2d 676, 679 n. 1 (9th Cir.1988) (district court's maintain "wide latitude in admitting or excluding psychiatric testimony on the question of a defendant's incapacity to form specific intent") (citation omitted).[16]

## 1. Revisionary Principles of the Insanity Defense Reform Act

The Insanity Defense Reform Act was passed in the wake of John Hinckley's acquittal of charges arising from his actions in shooting President Ronald Reagan and Press Secretary James Brady. Under our interpretation, the Act made the following changes with regard to the use of psychiatric evidence in federal criminal trials:

(1) eliminated the "volitional prong" of the often utilized Model Penal Code approach to the insanity defense, which would permit an acquittal by reason of insanity if the defendant "as a result of a mental disease or defect ... lacks substantial capacity ... to conform his conduct to the requirements of law," [17] and defined insanity narrowly as that "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts," 18 U.S.C. § 17(a); [18]

(2) eliminated all other *affirmative defenses or excuses* based upon mental disease or defect, *id.;*

(3) changed the burden of proof and burden to require the *defendant* to prove the affirmative defense of insanity by clear and convincing evidence, 18 U.S.C. § 17(b);

(4) limited the use of expert psychological testimony on ultimate legal issues, Fed. R. Evid. 704(b); and

(5) created a special verdict of "not guilty by reason of insanity," which triggers federal civil commitment proceedings, 18 U.S.C. § 4242(b).

Whether our list is exhaustive or not, it elucidates several of Congress' most important modifications of the rules relating to the use of psychiatric evidence.

First, it is clear that Congress meant to eliminate any form of legal excuse based upon one's lack of volitional control. This includes a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions. While scholars might debate the subtle distinctions in moral culpability occasioned by a person's relative capacity to consider her actions or resist unconscious motivation, Congress chose to eliminate any form of legal excuse based upon psychological impairment that does not come within the carefully tailored definition of insanity in section 17(a). Psychiatric evidence of impaired volitional control or inability to reflect on the ultimate consequences of one's conduct is inadmissible whether offered to support an insanity defense or for any other purpose.

Second, Congress "intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other *affirmative defense*, such as that the defendant had a 'diminished responsibility'

---

**16.** *See also United States v. Pohlot*, 827 F.2d 889, 905 (3d Cir.1987) (district courts must examine psychiatric testimony carefully in determining whether evidence has "sufficient scientific support to warrant use in the courtroom, and whether it would aid the jury in deciding the ultimate issues") (citations omitted); *United States v. Kepreos*, 759 F.2d 961, 964 (1st Cir.1985) (only in exceptional circumstances will reversible error be found in district court's evaluation of reliability and probative value of ex-

pert psychological testimony in a particular case).

**17.** Model Penal Code § 4.01 (1962). *See Pohlot*, 827 F.2d at 896.

**18.** *Compare United States v. Freeman*, 804 F.2d 1574–75 (11th Cir.1986) *with United States v. Weeks*, 716 F.2d 830 (11th Cir.1983).

or some similarly asserted state of mind which would serve to *excuse* the offense." S.Rep. No. 98–225, 98th Cong., 2d Sess. 229 (1984), *Reprinted in* 1984 U.S.Code Cong. & Ad. News, 3182, 3411 (emphasis added) (hereinafter *"Senate Report"*).

Finally, Congress was concerned about the danger that expert psychiatric testimony regarding inherently malleable psychological concepts can be misused at trial to mislead or confuse the jury. This legislative anxiety was independent of, and yet related to, the above-described concerns. *See* Fed.R.Evid. 704(b) (included in the same legislation as was in part codified at 18 U.S.C. § 20, later recodified at § 17).[19]

Federal courts should adhere to these three central principles of congressional reform when evaluating the admissibility of psychiatric evidence in trials for federal offenses.

At the threshold, however, we must address the confusion enveloping the use of the phrases "diminished capacity" and "diminished responsibility."

2. The persistent confusion surrounding the terms "diminished capacity" and "diminished responsibility"

Both parties contend that several circuits have differed as to whether the Act precludes the use of psychiatric evidence other than pursuant to an insanity defense. Under our reading of those cases, the courts that have addressed this issue are in complete agreement that Congress did not bar the admissibility of *all* psychiatric evidence pertaining to the defendant's *mens rea* (or lack thereof) in specific intent crimes. The debate, to the extent that one exists, is largely a product of persistent confusion surrounding the precise definition of the terms "diminished capacity" or "diminished responsibility," and the use of the word "defense" in connection with those common law expressions.

Some courts view "diminished responsibility" and "diminished capacity" as interchangeable phrases denoting a rule of admissibility regarding psychiatric evidence of specific intent:

> [T]he courts have used the labels diminished responsibility, diminished capacity, and other nomenclature merely as a shorthand for the proposition that expert evidence of mental abnormalities is admissible on the question of whether the defendant in fact possessed a particular mental state which is an element of the charged offense.... When a court rejects the doctrine of diminished capacity, it is saying that psychiatric evidence is inadmissible on the *mens rea* issue.

*Muench v. Israel,* 715 F.2d 1124, 1143 (7th Cir.1983), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984). *See also, Campbell v. Wainwright,* 738 F.2d 1573, 1580–81 (11th Cir.1984).

Other courts agree that the phrases "diminished responsibility" and "diminished capacity" are interchangeable, but contend that these labels define the use of psychiatric evidence not specifically to negate specific intent but to excuse, mitigate or lessen the defendant's moral culpability due to "psychiatric compulsion" or "inability or failure to engage in normal reflection." *See, e.g., United States v. Pohlot,* 827 F.2d 889, 890, 896 (3rd Cir.1987). This second group of courts distinguishes the "diminished capacity-diminished responsibility" brand of partial legal excuse from a "rule of evidence" that competent psychiatric evidence is admissible to negate specific intent. *Id.* at 897.

Still a third group of courts draws a sharp distinction between "diminished responsibility" and "diminished capacity." According to this group, "diminished responsibility" refers to "a showing that the accused suffered from an abnormality of mind that 'substantially impaired his mental responsibility.'" *United States v. Frisbee,* 623 F.Supp. 1217, 1221 n. 2 (N.D.Cal. 1985) (citation omitted). These courts employ the term "diminished capacity," on the other hand, to refer to "defenses aimed at negating specific intent." *Id. See also, United States v. Fazzini,* 871 F.2d 635, 641

**19.** Crime Control Act of 1984, Pub.L. No. 98– 473, §§ 402, 406, 98 Stat. 1837, 2057, 2067.

(7th Cir.1989); *Pohlot*, 827 F.2d at 897 (citing cases).

Appellant sought in her February 1st motion to use the term "diminished capacity" as it is understood in *Frisbee* to refer to evidence "attacking the prosecution's prima facie case by attempting to cast doubt on the prosecution's claim that a requisite mental element was present at the time of the offense."

▆▆▆ Suffice it to say that the several uses to which these labels have been put has often hindered the correct application of the two very distinct ideas that are applied under one, both, or neither of these labels. *See Twine*, 853 F.2d at 680; *Pohlot*, 827 F.2d at 895–97; *Frisbee*, 623 F.Supp. at 1221. *See generally*, Morse, *Undiminished Confusion in Diminished Capacity*, 75 J. Crim. L. & Crim., 1, 7–9 (1984). Regardless of the semantic "war of labels," both Congress and the courts have recognized the crucial distinction between evidence of psychological impairment that supports an "affirmative defense," and psychological evidence that negates an element of the offense charged. "Affirmative defense" evidence of mental impairment, when specifically recognized and defined by the legislature, must be raised by the defendant and can "justify" or "excuse" conduct that is otherwise criminal. *See* W. LaFave & A. Scott, Criminal Law, 152 (1972). Psychological evidence that aids the trier in determining the defendant's specific state of mind with regard to the actions she took at the time the charged offense was committed, by con-

trast, is not an affirmative defense but is evidence that goes specifically to whether the prosecution has carried its burden of proving each essential element of the crime—at least when specific intent is at issue.[20]

The first question we must answer is whether Congress excluded all use of psychiatric evidence to negate specific intent. We shall attempt to avoid confusion surrounding the "diminished capacity" and "diminished responsibility" labels by referring to "affirmative defense psychiatric evidence" and "psychiatric evidence to negate specific intent" to communicate the basic distinction between these two types of psychiatric evidence.[21]

### 3. Did Congress intend to prohibit all use of "psychiatric evidence to negate specific intent"?

▆▆▆ The government claims that several circuits disagree over whether Congress prohibited the use of psychiatric evidence that does not demonstrate insanity but instead negates specific intent. The government cites *United States v. White*, 766 F.2d 22 (1st Cir.1985), as a case in which the First Circuit prohibited such evidence pursuant to the Act. The defendant in *White* was charged with conspiracy to possess and possession of cocaine with intent to distribute. Ms. White attempted to present "mental state" psychiatric testimony to establish that she lacked specific intent to distribute cocaine because she was so psychologically dominated by her mother that she was compelled to distribute cocaine to help her. The First Circuit held

---

**20.** Psychological evidence is relevant to *mens rea* only when the defendant is charged with a specific intent crime. *Fazzini*, 871 F.2d at 641; *Twine*, 853 F.2d at 679; *United States v. Brawner*, 471 F.2d 969, 998–1002 (D.C.Cir.1972); *Frisbee*, 623 F.Supp. at 1224.

Under 21 U.S.C. § 841(a)(1), the government must prove that Ms. Cameron (1) knowingly (2) possessed "crack" cocaine (3) with intent to distribute it. *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983). Conspiracy to distribute under section 846 is also a separate crime for which intent is an issue. *United States v. Nahoom*, 791 F.2d 841, 845 (11th Cir.1986).

**21.** The confusion in labels is not altogether semantic, however, and the above attempt to dis-

tinguish the concepts is somewhat too facile when applied to the slippery substance of complex psychiatric concepts. As stated in *Pohlot*, the "use of psychiatric evidence to negate *mens rea* may easily slide into wider usage that opens up the jury to theories of defense more akin to justification." 827 F.2d at 905. The initial inquiry of whether Congress completely eliminated the use of psychiatric evidence except in connection with an insanity defense does not require us to illuminate and apply these concepts to the psychiatric evidence in this case, however, since, if Congress entirely eliminated the use of psychiatric evidence outside of the insanity defense, we need not inquire further.

that "evidence of a 'good motive' for violating the law is irrelevant if the defendant is cognizant that the law is being violated by the proscribed actions, *i.e.*, is capable of forming specific *criminal* intent." *Id.* at 24 (emphasis in original) (citation omitted).

*White* cited the then-recent decision of *United States v. Kepreos*, 759 F.2d 961 (1st Cir.1985), in which the First Circuit upheld a district court's denial of expert psychiatric testimony that the defendant "suffered from physical and psychological difficulties which adversely influenced his ability to attend to subtle details in his surroundings and to draw conclusions therefrom," and thus did not understand that he and his co-defendants were engaging in certain highly sophisticated forms of commodities futures fraud. *Id.* at 964. The *Kepreos* court relied on Federal Rule of Evidence 403 since such testimony was, under the circumstances, "both misleading and of questionable utility." *Id.* (footnote omitted). The court in *White* saw "no reason to abandon *Kepreos*, particularly since it concurs with the Congressional thinking as expressed in the recently enacted Comprehensive Crime Control Act of 1984, which abolished 'diminished capacity' as a defense." *White*, 766 F.2d at 24–25. (footnote omitted).

Our reading of *White*, as explained by its reliance on *Kepreos*, is that the First Circuit upheld the exclusion of "non-insanity" psychiatric evidence in two cases in which district courts did not abuse their discretion in finding that the potential prejudice and confusion fostered by such evidence outweighed its probity.[22] Thus, the dicta in

*White* sheds no light on whether Congress sought to abolish the use of such evidence in the Act.[23]

The Third and Ninth Circuits,[24] as well as a district court in the District of Columbia Circuit,[25] have addressed this issue in depth and have concluded that Congress did not preclude all use of "psychiatric evidence to negate specific intent." In *Pohlot*, Judge Becker for the Third Circuit concluded after an exhaustive analysis of the specific wording of 18 U.S.C. § 20, its legislative history, and the overall statutory scheme in the area, that Congress did not prohibit the use of "psychiatric testimony to negate specific intent." The *Pohlot* opinion is important to a complete understanding of this subject. Rather than restating Judge Becker's thorough analysis, we will summarize the most important indicators that Congress did not eliminate the use of "psychiatric testimony to negate specific intent."

In addition to redefining legal insanity and making it an "affirmative defense," Congress also provided in the specific wording of 18 U.S.C. § 20(a) that "[m]ental disease or defect does not otherwise constitute a defense." Prior to passage of the Act in 1984, the government had to prove beyond a reasonable doubt that the defendant was sane at the time of the offense since sanity was considered an implicit element of every offense. *See Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); *United States v. Freeman*, 804 F.2d 1574, 1575 (11th Cir.1986). The language of the Act does not on its

---

**22.** In *White*, the evidence of psychological domination did not preclude the formation of criminal intent, thus it was misleading and of little use. In *Kepreos*, the highly speculative psychiatric evidence was of questionable utility in determining the defendant's intent to commit commodities fraud.

**23.** Alternatively, the dicta in *White* may signal that the Seventh Circuit understands the Act to have eliminated the "diminished responsibility" or "lack of volitional control" evidence sometimes referred to under the label "diminished capacity." *See* discussion above at pp. 1060–63. This interpretation is completely consistent with our reading of the Act.

**24.** A panel of the Seventh Circuit has noted in passing that it "assume[d], without deciding, that the defense of diminished capacity survives the Insanity Defense Reform Act of 1984." *Fazzini*, 871 F.2d at 641, citing *Twine*, 853 F.2d at 678–79. In *Twine*, the Ninth Circuit explicitly adopted the reasoning set forth in *Frisbee*, 623 F.Supp. 1217, which had held that the use of "psychiatric evidence to negate specific intent" survived the Act.

**25.** *United States v. Gold*, 661 F.Supp. 1127 (D.D.C.1987).

face seem to bar the use of such evidence to negate specific intent:

> Because admitting psychiatric evidence to negate mens [rea] does not constitute a defense but only negates an element of the offense, § 17(a) by its terms does not bar it. Section 17(a) states only that "mental disease ... does not otherwise constitute a defense;" it does not purport to establish a rule of evidence.

*Pohlot,* 827 F.2d at 897.

The legislative history of section 20 demonstrates that Congress utilized the phrase "affirmative defense" with a full understanding of the distinction between a legal justification or excuse for otherwise criminal conduct, and evidence that negates an essential element of the government's *prima facie* case. *See id.* at 897–899, 902–903.[26]

Finally, section 20 is a part of a statutory scheme that supports the interpretation that Congress did not eliminate the use of "psychiatric evidence to negate specific intent." *Id.* at 899, 899 n. 8; *Frisbee,* 623 F.Supp. at 1222.[27]

While we express no opinion on whether Congress could eliminate the use of such

---

**26.** The *Senate Report* of the bill, which in all relevant respects became law, states that section 20 was "intended to insure that the insanity *defense* is not improperly resurrected in the guise of showing some other *affirmative defense,* such as that the defendant had a 'diminished responsibility' ... which would ... open the door, once again, to needlessly confusing psychiatric testimony." *Senate Report, supra* at 229, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3411 (emphasis added). "Congress clearly understood that section 20 would not have the effect of making expert testimony on the issue of specific intent inadmissible unless offered in conjunction with an insanity defense." *Frisbee,* 623 F.Supp. at 1220.

The same idea is expressed in the House Report on the bill that became law:
> [The definition of insanity in section 17(a)] constitutes the only affirmative defense based on mental disorder that will be applicable in Federal courts. *Mental Disorders will remain relevant, of course, to the issue of the existence of any mental state required for the offense, such as the specific intent required for certain crimes. This accords with current practice.*

H.R.Rep. No. 98–577, 98th Cong., 1st Sess. 14 (1983) (citations omitted) (hereinafter *"House Report"*). The *House Report* also stated that:
> The use of mental disorder [evidence] to negate mental state elements of crimes should not be confused with the "diminished capacity" defense as developed by the California courts during the 1960's and 1970's. Under that doctrine, a defendant could escape responsibility for a crime by demonstrating not that he or she lacked a required specific intent, but rather that his or her capability of entertaining that intent was not, because of mental disorder, commensurate with that of nondisordered persons.

*Id.* at 15 n. 224.

As noted, in footnote 8, the government's contention that notice under Rule 12.2(b) does not necessarily mean that the defendant intends to present an insanity defense (since she could instead intend to present psychiatric evidence *unrelated* to the issue of insanity) directly contradicts its contention that Congress meant to eliminate the use of psychiatric evidence when not presented strictly to support an insanity defense.

Congress amended Rule 12.2(b) shortly after it passed the Insanity Defense Reform Act, yet Congress left the notice requirement unchanged. Rule 12.2(b) was modified slightly in legislation passed on October 30, 1984. Pub.L. No. 98–596, § 11, 98 Stat. 3134, 3138 (1984). Section 20 was enacted over two weeks earlier on October 12, 1984. Pub.L. No. 98–473, § 402, 98 Stat. 1837, 2057 (1984). While an isolated instance of Congress' unwillingness to legislate or amend particular rules is not itself overwhelming evidence of legislative intent, it provides one more indication that Congress did not intend to eliminate the use of "psychiatric evidence to negate specific intent."

**27.** First, Federal Rule of Evidence 704(b) was enacted as part of the same legislation which produced section 20. *See* footnote 19 above and accompanying text. Rule 704(b) states that
> [n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the triers of fact alone.

This means that (1) "Congress appreciated the distinction between evidence negating specific intent and evidence supporting a finding of insanity," *Frisbee,* 623 F.Supp. at 1222; and (2) "[Rule 704(b)'s] exclusion of ultimate issue testimony is Congress' acknowledgment that expert testimony may otherwise be admissible either on the issue of specific intent or on the issue of insanity." *Id.* at 1222–23.

Second, as we have discussed, Rule 12.2(b) requires notice of an intent to introduce expert testimony relating to the defendant's mental condition. If Congress had meant to eliminate entirely the use of "psychiatric testimony to negate specific intent," Rule 12.2(b), at least in

evidence without violating the Constitution,[28] it is clear from our reading of the Act that Congress meant to preclude only the use of "non-insanity" psychiatric evidence that points toward "exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection." *Pohlot*, 827 F.2d at 890. Congress distinguished such evidence from "psychiatric evidence to negate specific intent" and did not intend to exclude the latter in all instances. *Gold*, 661 F.Supp. at 1131; *Frisbee*, 623 F.Supp. at 1222.

This interpretation of the Act does not, however, resolve the question of whether the district court erred in prohibiting appellant from presenting the particular psychiatric evidence at issue in this case.

#### 4. Did the District Court abuse its discretion in excluding the psychiatric evidence offered?

■ Lawmakers, not courts, have the ultimate responsibility to determine the level of consciousness and control below which otherwise "guilty" conduct will be excused. Courts and juries, on the other hand, must determine whether a defendant possesses the statutorily specified mental state to be guilty of a particular crime.[29]

■ "Only in the rare case, however, will even a legally insane defendant actually lack the requisite *mens rea* purely because of mental defect." *Id.* at 900. *See* Arenella, *The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage*, 77 Colum.L.Rev. 827, 834 (1977). When a defendant claims to have psychiatric evidence that she "lacked the capacity" or was "incapable" of forming the intent necessary for the crime charged, most often that defendant is speaking of an incapacity to reflect or control the behaviors that produced the criminal conduct.[30] Such evidence is not "psychiatric evidence to negate specific intent" and should not be admitted. Otherwise,

> the insanity defense [will be] improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a "diminished responsibility" or some similarly asserted state of mind which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric testimony.

its present form, would seem unnecessary. *See id.* at 1223; *Pohlot*, 827 F.2d at 899 n. 8.

**28.** *See Campbell v. Wainwright*, 738 F.2d 1573, 1580–82 (11th Cir.1984), *cert. denied*, 475 U.S. 1126, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986) (upholding Florida's rejection of "psychiatric/specific intent evidence" because of potential juror confusion). *See also, Pohlot*, 827 F.2d at 901–902 n. 12 (collecting cases in which courts have upheld the exclusion by various states of psychiatric evidence of *mens rea* on the basis of confusion, unreliability, and irrelevance).

**29.** As we have explained, Congress intended through various provisions of the Insanity Defense Reform Act to (1) "eliminate all forms of psychiatric defenses based upon lack of volitional control or an inability to reflect adequately before taking an action, (2) limit the scope of expert psychiatric testimony on ultimate legal issues, and (3) carefully control the use of inherently malleable psychiatric evidence so that juries hear only evidence of a *legally acceptable* theory of lack of *mens rea*." *Pohlot*, 827 F.2d at 905–06 (emphasis added). These principles illuminate the contours of acceptable "psychiatric evidence to negate specific intent."

**30.** As one commentator has suggested, evidence offered as "psychiatric evidence to negate specific intent" often focuses not on a defendant's specific intent at the time the offense was committed, but on the defendant's "awareness" of intent and whether the defendant was fully reflective or in control of her unconscious motivations:

> At nearly all times, human beings are conscious of themselves, they perceive and are aware of what they are doing as they do it.... This self-reflective split in consciousness that allows self-monitoring is an important regulator of behavior, for it provides constant feedback that allows us to correct maladaptive behaviors.... [Does the lack of self-awareness mean that] *mens rea* is lacking? On the one hand, the defendant knows at some level what he is doing and intends to do it; on the other hand, he is not fully conscious of his actions in the usual sense.... *Mens rea* is present but the usual control structures are compromised.

Morse, *supra* at 46–47 (footnotes omitted). Professor Morse's point is that a lack of conscious self-reflection does not mean a lack of intent and therefore does not negate *mens rea*. *Pohlot*, 827 F.2d at 906. We agree.

*Senate Report, supra* at 229, 1984 U.S. Code Cong. & Ad.News 3411.

■ Evidence offered as "psychiatric evidence to negate specific intent" is admissible, however, when such evidence focuses on the defendant's specific state of mind at the time of the charged offense. *United States v. Staggs*, 553 F.2d 1073 (7th Cir. 1977), provides an example of the appropriate use of "psychiatric evidence to negate specific intent." Mr. Staggs was charged with threatening to shoot a policeman. He denied making the threat and sought to introduce psychiatric evidence that he suffered from a mental condition that made it highly unlikely that he would make such a threat. The Seventh Circuit reversed the district court's exclusion of this evidence since it did not imply a legal excuse for the conduct engaged in by Staggs, nor did it suggest a theory of unconscious motivation or lack of volitional control. The evidence instead shed light on whether Staggs possessed a specific state of mind that would make him guilty of a more serious crime than his conduct alone would support.[31]

■ Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's from focusing on the actual presence or absence of *mens rea*, and (3) "may easily slide into wider usage that opens up the jury to theories of defense more akin to justification," *Pohlot*, 827 F.2d at 904–5, district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, "support a *legally acceptable* theory of lack of *mens rea*." *Id.* at 906. For all of the above reasons, such evidence should be evaluated outside the presence of the jury. *Id.* (citing *United States v. Brawner*, 471 F.2d 969, 1002 (D.C.Cir.1972)).

■ In this case, appellant failed to identify precisely the psychiatric evidence she wished to introduce. Only by happenstance did appellant present in her motion for hospitalization any evidence of mental impairment whatsoever. Ms. Cameron merely offered to prove that psychiatrists had on two occasions diagnosed her as "schizophrenic," and that she was receiving some sort of undisclosed psychological counseling at the time the charged offenses took place. Appellant did not explain to the district court how her psychiatric evidence would demonstrate that she did not intend to distribute "crack" cocaine.

Ms. Cameron claims that she would have demonstrated that her mental condition "rendered her incapable of forming the specific intent necessary to commit the crimes charged"; and she maintains that a jury should have considered evidence of her "mental defect" on the issue of whether she possessed the "mental capacity" to intend to distribute drugs. Even on appeal, appellant has failed to demonstrate how her psychiatric evidence would negate intent and not merely present a dangerously confusing theory of defense more akin to justification and excuse than a "legally acceptable theory of lack of *mens rea*." *Pohlot*, 827 F.2d at 906. Absent such a showing, we cannot find that the district court abused its discretion in prohibiting

---

**31.** In *Frisbee,* the defendant was charged with first-degree murder in violation of 18 U.S.C. § 1111 for the death of an elderly woman who apparently died from multiple traumas to the head. The defendant and the deceased shared a suite aboard a commercial cruise ship at the time of her death. The defendant indicated to authorities that, to the best of his knowledge, he was the only person in the room other than the victim at the time the homicide allegedly occurred, and that, although he had no recollection of striking the victim, he thought he must have done so since no one else was in the room at the time. Psychiatric reports indicated that the defendant suffered from periodic blackouts or seizures and amnesia at various times during his life due to serious alcohol abuse over many years.

At trial, the district court allowed the defendant to present psychiatric evidence that, "due to some combination of pathological intoxication, organic brain damage, and an alcohol blackout or seizure, the defendant could not have possessed the requisite specific intent during the relevant time period" to have committed first-degree murder.

One could phrase the psychiatric testimony in *Staggs* and *Frisbee* as relating to "capacity" or "ability to form a certain intent." The particular label used to describe the testimony is not, however, particularly relevant whether the evidence is admissible. The proper focus should be on the proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case.

Ms. Cameron from presenting such unarticulated psychiatric evidence.

As the court stated in *Pohlot*, "[w]hether the district court applied this correct analysis or accepted the incorrect broader view [that the Insanity Defense Reform Act prohibits entirely the use of "psychiatric evidence to negate intent"], it was correct [to exclude such evidence] under the circumstances [of this case]." *Pohlot*, 827 F.2d at 907.

### III. CONCLUSION

The district court correctly excluded evidence of "diminished capacity" in this case. Prohibiting the defendant from offering an insanity defense because of lack of notice under Rule 12.2(a) was error. The sufficiency of Ms. Cameron's proposed evidence of insanity should be evaluated by the district court. Appellant's conviction is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

EDMONDSON, Circuit Judge, concurring:

I concur in the court's judgment and in most of the opinion. But I cannot agree that Cameron's motion for hospitalization and "various other isolated portions of the record" constituted—as part II.C of today's opinion says—an offer of proof regarding psychiatric evidence of insanity.

An offer of proof in accord with Federal Rule of Evidence 103 is ordinarily essential for relief when a decision excluding the admission of evidence is challenged. Unless the trial judge otherwise allows, the offer should be made when the objection or the motion to exclude evidence is made. District judges have no duty to sift through the record, including pretrial motions not expressly on point, to learn what evidence is in controversy.[1] The offering party has the obligation to identify the proposed evidence and its importance so that the trial judge has the chance to rule correctly on evidentiary objections. In this case, Cameron made no such offer.

The district court's decision to exclude Cameron's evidence on the insanity defense, however, did not turn on the quality of the proposed evidence, but on what the district judge saw as Cameron's failure to give adequate notice of her intention to assert the insanity defense. Put differently, the district court's decision on the motion to exclude evidence was not an evidentiary ruling, but a ruling on a procedural point that prohibited evidence from being presented. See generally Federal Rule Criminal Procedure 12.2. In this context, Rule 103 is inapplicable and a proffer is unnecessary.[2] Prejudice requiring a remand for further proceedings is presumed from the erroneous prohibition of the insanity defense which might have barred conviction; to justify this remand, we need not consider defendant's evidence.

---

**1.** The March 2, 1988 motion for hospitalization dealt with a matter that the district court would not have to consider until Cameron was found guilty: the motion, pursuant to 18 U.S.C. § 4244, sought psychiatric treatment in lieu of imprisonment if she were found guilty. Nothing in the record shows that before trial the judge had read this motion which dealt with post-trial proceedings; nor was there a requirement that he must have or should have done so. In addition, defendant's motion for hospitalization stated only some facts to be proved—for example, that Cameron had been discharged from the military for schizophrenia—and not the evidence that would prove these facts. Last, the motion for hospitalization, which was filed several days before the hearing on the government's motion to exclude evidence, was on its face in no way linked to questions of evidence pertinent to Cameron's trial. Therefore, it is a fiction to call this motion "a formal offer of proof regarding psychiatric evidence of insanity" as does today's opinion. If a proffer were needed, what was done here would be inadequate and untimely.

**2.** Had Cameron not complied with Rule 12.2(a)'s notification requirement, she would be unentitled to relief from the consequences of her procedural default absent a showing of cause for this failure and of actual prejudice. *See United States v. Winn*, 577 F.2d 86, 89 (9th Cir.1978). A showing of actual prejudice would require something in the record demonstrating a factual basis for a viable insanity defense. We have concluded, however, that Cameron complied with the rule and that she adequately notified the government and the trial court of her intent to assert an insanity defense.