**UNITED STATES of America,**

v.

**Carmine AGNELLO, Defendant.**

**No. 00 CR 205(NG)(RML).**

United States District Court,
E.D. New York.

Sept. 10, 2001.

Assistant U.S. Attorneys, Bridjet Rohle, Andrew Genser, E.D.N.Y., Brooklyn, NY, for plaintiff.

Benjamin Brafman, Brafman & Ross, P.C., New York City, for defendant.

## OPINION AND ORDER

GERSHON, District Judge.

Defendant Carmine Agnello seeks to offer evidence of a mental condition, identified as bipolar disorder, to negate the intent required for the various crimes with which he is charged. The government moves to preclude such evidence.[1]

In the Insanity Defense Reform Act of 1984, Congress limited the defense of insanity to where "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18

---

[1] This opinion was written in anticipation that the defendant would go to trial. On August 13, 2001, an order granting the motion was issued with the notation that an opinion would follow. Then, on August 16, 2001, defendant pled guilty to various of the charges pursuant to a plea agreement. This is the opinion referred to in the August 13 order.

U.S.C. § 17(a). Congress further provided that "Mental disease or defect does not otherwise constitute a defense." *Id.* In so doing, Congress excluded the "volitional prong" of the insanity defense, which had permitted an acquittal by reason of insanity if the defendant as a result of mental disease or defect lacks substantial capacity to conform his conduct to the requirements of law. *United States v. Cameron,* 907 F.2d 1051, 1060–61 (11th Cir.1990); *United States v. Pohlot,* 827 F.2d 889, 895–96 (3rd Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988). Congress also placed the burden upon the defendant to prove the defense by clear and convincing evidence. 18 U.S.C. § 17(b). At the same time, Congress amended the Federal Rules of Evidence to provide that

> "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."

Rule 704(b), Fed.R.Evid. *See Cameron,* 907 F.2d at 1062.

As the government acknowledges, these limitations do not foreclose the admissibility of all evidence as to mental condition that pertains to the defendant's intent.[2] *See United States v. Schneider,* 111 F.3d 197, 200–201 (1st Cir. 1997); *Cameron,* 907 F.2d at 1063–66; *Pohlot,* 827 F.2d at 895–903. However, as the Court in *Cameron* explained, "it is clear that Congress meant to eliminate any form of legal excuse based upon one's lack of volitional control. This includes a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions.... Congress chose to eliminate any form of legal excuse based upon psychological impairment that does not come within the carefully tailored definition of insanity in section 17(a)." 907 F.2d at 1061. Congress also sought to ensure that the insanity defense would not be improperly resurrected in the guise of some other affirmative defense such as "diminished responsibility," which would excuse the offense. *Id.* at 1061–62. Thus, where evidence of mental abnormality is offered "in support of a legally unacceptable theory of lack of mens rea that amounts covertly to a variation of the partially diminished capacity defense precluded by § 17(a)," it must be excluded. *Pohlot,* 827 F.2d at 907.

The question then is whether the specific evidence offered is in fact relevant to the defendant's intent or rather, as the government argues, is in reality an effort to evade the restrictions of 18 U.S.C. § 17(a). The defendant has failed to establish the necessary link or fit between his alleged mental defect or disease and the intent required of any of the crimes charged against him. That is, even assuming that mental condition evidence is potentially admissible as to each of the crimes charged, without regard to their being labeled as specific intent crimes or not, see footnote 2 *supra,* there has simply been no showing that the proffered evidence would be probative of the defendant's intent.

The defendant argues that the government's tapes throughout the time period charged in the indictment contain references by the defendant to his "racing" or

---

**2.** The government argues that the only crimes for which such evidence is admissible are specific intent crimes and that only some of the crimes charged against the defendant are specific intent crimes. The defendant disputes both propositions. For reasons set forth below, it is unnecessary to address these disputes.

"speeding up," which the defense describes as "problems classically identified with his illness." Accepting as true that such references occur, the proffer is nonetheless inadequate to show that the defendant lacked intent to commit any of the crimes charged. The fatal flaw in the defendant's proffer is that the evidence is aimed, not at negating intent, but rather at suggesting that the defendant was unable to control his actions, an issue which Congress has expressly excluded as a defense. That the defendant, for whatever reason, was "racing" or "speeding up" says nothing about his intent to commit crimes. The mere fact, if it is a fact, that these problems are "classically identified with his illness" does not mean that the problems have anything to do with his intent. At most, they may suggest a lack of ability to control himself.

■ Dr. Daniel Crane, the defendant's proffered expert, quotes from a textbook about the symptoms of bipolar disease. Nothing he quotes relates to the formation of intent much less the formation of intent to commit crimes. Dr. Crane also quotes the defendant, as follows: "He said that he had such temper outbursts and such loss of impulse control that he had to put his hands in his pockets repeatedly to control his temper. During this time, he would explode verbally, and use expressions which he had learned on the streets. These whilst violent in nature, were merely expressions common to the social milieu in which he lived." Crane Report at p. 5. Nothing in this goes to the defendant's intent to engage in criminal acts. Similarly, the defendant's reliance on a tape recording in which a cooperating witness speaks of his ability to manipulate Agnello until he snaps, goes to control, not intent. Thus, Dr. Crane's opinion that he was "malleable to the whims of those who understood his short fuse and psychopathology," *id.*, is not relevant.

■ The September 18, 2000 letter of counsel for the defendant also claims, at p. 2, that the defendant's " 'state of mind' was at various times adversely affected as a result of his physical disorder and the medication that he must take in order to treat his specific illness." In the absence of any claim of a physical disorder, I assume that the reference is to the bipolar disorder that Dr. Crane has diagnosed. As for the medication's side effects, there is no evidence proffered that any of the medications which the defendant took had any adverse effect on his mind. The only side effects identified by the defendant are of a physical nature. See Dr. Crane's report at p. 4, and the report of forensic psychologist, Dr. N.G. Berrill, who examined the defendant for the government, at p. 6. Also, there is no connection made between the time when the side effects allegedly occurred and the time when the crimes were committed, nor any effort to identify when the mental condition defense is based upon the effect of medications or rather on the effect of *lack* of medication.

In sum, this is precisely the type of medical condition evidence that has been rejected repeatedly by the courts. For example, in *Cameron, supra,* psychiatric evidence was excluded in a narcotics case because the defendant could not show how that evidence would negate her intent to distribute cocaine. In *United States v. Richards,* 9 F.Supp.2d 455 (D.N.J.1998), the court found that the psychiatric evidence that the defendant had a major depression disorder at the time the offense was committed did not establish a legally adequate basis for negating intent. In *United States v. Griffin,* 1996 WL 140073 (S.D.N.Y.1996), the court noted the absence of specifics as to the defendant's state of mind when the murder and other crimes of which he was charged were committed and rejected the medical condition

evidence as legally inadequate because it amounted merely to a claim that the defendant can become "easily controlled" and "readily influenced" by others. *Id.* at *9–11. *United States v. Towns*, 19 F.Supp.2d 67 (W.D.N.Y.1998), is also instructive. There, the court excluded evidence that defendant suffered from a schizoaffective disorder, alcohol dependence and borderline intellectual functioning on the ground that there was no connection shown between the proffered evidence and the defendant's intent to rob a bank, but allowed the evidence, as to the abnormalities suffered on the day of the bank robbery, for the limited purpose of supporting the defendant's theory of motive, namely, to corroborate the defendant's anticipated testimony that he faked robbing the bank solely for the purpose of being apprehended so that he could obtain medical attention for his mental condition, and that he did not intend to actually commit robbery.

■ In addition, the defendant acknowledges that, to be admissible, the medical evidence as to intent must relate to the times of the offenses charged, but argues that there need be no specificity tying the defendant's mental condition to the particular dates the crimes were committed. Here, the crimes charged extend over a period of some three and a half years. Unlike *United States v. Childress*, 58 F.3d 693, 726–30 (D.C.Cir.1995), *cert. denied*, 516 U.S. 1098, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996), where the court ruled that the district court had erred in categorically barring evidence of the history of the defendant's mental retardation on the issue of intent, here the defendant's own proffer is that he sometimes took prescribed medications which controlled his condition. Dr. Crane also claims, apparently based principally on the defendant's own reporting, that the defendant did not "generally" take his medication as ordered, "which has resulted in erratic control of the symptomatology so typical of his condition," and that "he has only taken his prescribed medication on a very inconsistent and erratic basis, which has led to an almost complete lack of control over his almost constant level of mania and hypomania." Crane Report at 2, 4. It is thus clear that, unlike the mental retardation at issue in *Childress*, the defendant is proffering a disease which at times was controlled and at times was not. Especially under these circumstances, merely showing that he had a particular condition over a three and a half year period, which was sometimes controlled by medication, cannot be sufficient basis for arguing to the jury that specific charged instances of criminal conduct were not intended by the defendant.

■ Even if there were any limited probative value to the proffered evidence, that value is substantially outweighed by the danger that it will confuse the issues and mislead the jury. It therefore must be excluded under Federal Rule of Evidence 403. "Congress was concerned about the danger that expert psychiatric testimony regarding inherently malleable psychological concepts can be misused at trial to mislead or confuse the jury." *Cameron*, 907 F.2d at 1062. The evidence proffered could easily mislead the jury into thinking that such evidence ameliorates or excuses the offense, that is, that it provides the very kind of defense that Congress has expressly disallowed. *See Schneider; Richards*, 9 F.Supp.2d at 460. For example, in *Schneider*, the First Circuit found that the proffered evidence that the drugs the defendant was taking would impair intellectual functioning by producing blackouts, roller coaster highs and lows and permit misperception and delusion may have been relevant to a limited degree

though not sufficient in itself to negate intent, but was properly excluded under Rule 403 because of its tendency to confuse and mislead the jury. *Schneider*, 111 F.3d at 201–203.

The parties have not addressed and, in light of my conclusions, I do not need to reach the viability of the expert evidence offered under Rule 702 of the Federal Rules of Evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–91, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Finally, I note that this ruling applies to the mental condition defense that has been proffered and is not limited to the psychiatric evidence. *See Pohlot*, 827 F.2d at 905 ("expert psychiatric evidence is not the only evidence of mental abnormality bearing on mens rea, for a defendant or other witnesses may testify about mental abnormality. Courts should also be careful in deciding whether to issue jury instructions or to permit defense arguments directing the jury to consider whether any evidence of mental abnormality negates mens rea.").

**SO ORDERED.**