UNITED STATES of America, Plaintiff,

v.

**William Franklin HILL, Jr., Defendant.**

**Crim. A. No. 1:90–cr–66–HLM.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 20, 1990.

ed to avail himself of an insanity defense. In this motion the Defendant, who is charged with numerous counts of bank and wire fraud, is seeking to challenge the constitutionality of the Insanity Defense Reform Act of 1984 ("IDRA" or "Act"). 18 U.S.C. § 17.[1] The essence of the constitutional challenge is premised on what the Defendant apparently believes is the failure of Section 17 to embody all the variables of mental incapacity in its test for insanity. Thus, the Defendant writes:

> This [test] does not consider the fact that an individual may have a mental illness, may know that it is wrong to do what they did wrong, but cannot help themselves.... [T]he present test and standard is unconstitutional because it, in effect, may make an individual guilty for a crime in which he did not have the mental capacity to prevent himself from doing, due solely to his mental illness. Thus, he could not formulate an intent that would be criminal in nature.

August 15, 1990, Brief in Support of Motion at 1–2.[2]

Though it is not altogether clear, the Court surmises that what the Defendant is attempting to argue is that he suffers from a diminished capacity in the form of an irresistible compulsion, and that Section 17, since it allegedly does not provide for such a defense, is unconstitutional.

This reading of the motion is entirely plausible given the accepted understanding of a diminished capacity as a defense tending to establish that the defendant is incapable of forming the specific intent required to satisfy the mens rea component of the charged crime.[3] Therefore, when the De-

---

Cliffe Lane Gort, Gort Hassett Cohen & Beitchman, Atlanta, Ga., for defendant.

Robert Francis Schroeder, Office of U.S. Atty., N.D.Ga., Atlanta, Ga., for U.S.

## MEMORANDUM & ORDER

HAROLD L. MURPHY, District Judge.

### I.

On April 6, 1990, the Defendant gave notice pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure that he intend-

---

1. Section 17 address the instances in which a federal defendant can raise an insanity defense. The Section reads:

   (a) **Affirmative Defense.**—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his act. Mental disease or defect does not otherwise constitute a defense.

   (b) **Burden of Proof.**—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.
   18 U.S.C.A. § 17 (West Supp.1990).

2. In support of his motion to declare the insanity law unconstitutional, the Defendant submits a two-page argument devoid of any legal citation in support thereof. The Government has chosen not to respond to the Defendant's motion.

3. The Court notes that there is considerable debate among the circuits as to the exact mean-

fendant maintains that the present test for insanity is unconstitutional because it may make an individual guilty of a crime for which he cannot form the requisite intent, he is essentially propounding a diminished capacity defense. Accordingly, there are two issues before the Court. Firstly, has the IDRA eliminated the defense of diminished capacity and secondly, assuming that it has, is its elimination constitutional?

## II.

The IDRA was enacted in the wake of the assassination attempt on President Reagan. The Act completely altered the instances in which psychiatric evidence can be used by a federal criminal defendant seeking exculpation by reason of insanity. The IDRA worked its reform by producing three primary changes to the traditional insanity defense in federal courts.

First, and most importantly, the definition of insanity was restricted so that a valid affirmative defense is possible only where the defendant is "unable to appreciate the nature and quality or the wrongfulness of his acts" at the time of the offense. 18 U.S.C.A. § 17(a) (West Supp.1990). This modification meant that any legal excuse based on a lack of volitional control was no longer relevant to the defense of insanity. Thus the widely accepted "volitional prong" of the Model Penal Code which exculpated a defendant upon a finding that he lacked the substantial capacity to conform his conduct to the requirements of the law was eliminated. Model Penal Code § 4.01 (1962) *see also, United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990).

By concluding Section 17(a) with the declarative statement that any other mental disease or defect would not constitute a defense, Congress made clear its intention that evidence of a psychological impairment beyond that allowed for in the first part of Section 17(a) would not be tolerated in a defense based on insanity. As Judge Hill said writing for the Eleventh Circuit, "[p]sychiatric evidence of impaired volitional control or inability to reflect on the ultimate consequence of one's conduct is inadmissible ... to support an insanity defense...." *Ibid.*

The second important change manifested by the IDRA was shifting the burden of proving the defense of insanity to the defendant. 18 U.S.C.A. § 17(b) (West Supp. 1990). This burden must be carried by clear and convincing evidence. *Ibid.*

ing of "diminished capacity" and how that term functions in connection with criminal defense.

In *United States v. Cameron*, the Eleventh Circuit recently considered the persistent confusion surrounding the terms "diminished capacity" and its sister principle "diminished responsibility." 907 F.2d 1051, 1062–63 (11th Cir.1990). After canvassing the various definitions and distinctions, the Eleventh Circuit panel essentially changed the debate. Instead of providing definitional guidance, the Circuit concluded that what is important in light of the IDRA is not the label assigned to a particular concept, but the distinction between "affirmative defense psychiatric evidence" and "psychiatric evidence which tends to negate specific intent." As the Circuit explained:

Suffice it to say that the several uses to which these labels have been put has [sic] often hindered the correct application of the two very distinct ideas that are applied under one, both, or neither of these labels. Regardless of the semantic "war of labels," both Congress and the courts have recognized the crucial distinction between evidence of psychological impairment that supports an "affirmative defense," and psychological evidence that negates an element of the offense charged.

We shall attempt to avoid confusion surrounding the "diminished capacity" and "diminished responsibility" labels by referring to "affirmative defense psychiatric evidence" and "psychiatric evidence to negate specific intent"....

*Id.* at 1063.

While this Court can appreciate the Circuit's attempt at conceptual consistency, it finds the "new" nomenclature introduced by the Circuit to be cumbersome and not particularly helpful. Accordingly, as used in this Memorandum & Order the term "diminished capacity" refers exclusively to a defense aimed at negating specific intent by showing either that the defendant cannot form the requisite mens rea or that there is sufficient evidence of mental abnormalities to negate mens rea. *See generally, United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir.1989); *United States v. Pohlot*, 827 F.2d 889, 903 (3rd Cir. 1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988); *United States v. Frisbee*, 623 F.Supp. 1217, 1221 n. 2 (N.D.Cal.1985) (all referring to diminished capacity as a defense based on an inability to establish mens rea).

Finally, the IDRA amended Federal Rule of Evidence 704(b) to prohibit expert testimony as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. In short, a witness may not offer opinion testimony as to the ultimate issue of insanity. "Such ultimate issues are matters for the trier of fact alone." Fed.R.Evid. 704(b); *see also, United States v. Freeman,* 804 F.2d 1574, 1575–76 (11th Cir.1986).

It is the restrictive definition of insanity that is at the heart of Defendant's challenge, and thus, the issue which will concern the Court.

### III.

### A.

*Has the IDRA Eliminated the Affirmative Defense of Diminished Capacity*

A defendant's mental state is placed into evidence for a variety of reasons. Most commonly it is introduced to establish the insanity defense. This defense is not concerned with the mens rea component of a criminal act; rather, it "operates to completely excuse the defendant whether or not guilt can be proven." *United States v. Twine,* 853 F.2d 676, 678 (9th Cir.1988).

In this case, the Court is faced with an alternative use of mental evidence, to wit, its use in the establishment of a diminished capacity defense. Unlike insanity, this defense does not exculpate the accused. Instead, it directly concerns whether the defendant possesses the ability to attain the culpable state of mind which defines the crime. *Ibid.* Thus, a diminished capacity defense applies only to specific intent crimes. *Cameron,* 907 F.2d at 1063 n. 20: *United States v. Martin,* 747 F.2d 1404, 1410 (11th Cir.1984). It follows that a defendant who is successful in establishing a diminished capacity defense is not guilty of the offense charged, though he or she may be guilty of a lesser included general intent offense.

■ The IDRA specifically makes the defense of insanity an affirmative defense.

18 U.S.C.A. § 17(a) (West Supp.1990). In the criminal context the term "affirmative defense" is generally understood to refer to a defense that must be raised by the defendant and which either challenges the jurisdiction of the court or provides an excuse for conduct that is otherwise criminal. *United States v. Frisbee,* 623 F.Supp. 1217, 1220 (N.D.Cal.1985) *citing* W. Lafave & A. Scott, *Criminal Law* 152 (1972). Therefore, an argument that is intended to establish innocence as opposed to excuse or justification is not barred by the IDRA. Consequently, a diminished capacity defense that refutes the *intent* element necessary to satisfy the mens rea component of a criminal offense is not precluded by the congressional reforms of 1984. *Cameron,* 907 F.2d at 1065; *see also, United States v. Pohlot,* 827 F.2d 889, 897–99 (11th Cir. 1987), *cert. denied* 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988). The legislative history bears out this conclusion.

The legislative history of Section 17 establishes that Congress intended to reform the insanity defense by defining its exact parameters to the exclusion of all other theretofore existing affirmative defenses based on a defendant's mental state. Accordingly, the final sentence of Section 17(a) specifically provides that to the extent a defense is based on a mental disease or defect other than one affecting the ability of the defendant to appreciate the nature or wrongfulness of his act, the same shall not constitute an affirmative defense. 18 U.S.C.A. § 17(a) (West Supp.1990). The senatorial report accompanying the IDRA to the Senate floor confirms this plain reading:

> The [language included] in section [17(a)] explicitly provid[es] that mental disease or defect other than that which renders the defendant unable to appreciate the nature and quality or wrongfulness of his act does not constitute a defense. This is intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other *affirmative defense* such as that the defendant had a "diminished responsibility" or some similarly asserted state of mind which would serve to *excuse* the

offense and open the door, once again, to needlessly confusing psychiatric testimony.

S.Rep. No. 225, 98th Cong., 2d Sess. 229, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3411; *quoted in Frisbee,* 623 F.Supp. at 1220 (emphasis added by court).

There is little doubt but that Congress has strictly limited the reach of the insanity defense. To the extent the Defendant might be arguing that the IDRA does not provide for the *affirmative defense* of diminished capacity[4] he is correct.

Having so concluded, the Court next considers whether the Act is unduly restrictive and therefore subject to a constitutional challenge.

### B.

*Is the Limitation on the Affirmative Defense of Insanity Constitutional*

■■■ Congress clearly has the authority to establish and prescribe by law those defenses that are available to defendants accused of federal criminal conduct. The Constitution grants Congress the authority to make all laws necessary to effectuate its authority. *See,* U.S. Const. art. I, § 8, cl. 18. Of course, this authority is not unchecked. Congress may pass only those laws which are consistent with the limits contained within the Constitution. *Graham v. John Deere Co.,* 383 U.S. 1, 6, 86 S.Ct. 684, 688, 15 L.Ed.2d 545 (1966).

■■ The Defendant contends that the IDRA violates the Due Process Clause of the fifth amendment.[5] He is incorrect. The IDRA has set up a scheme by which the *affirmative defense* of insanity is circumscribed. It has not, as the Defendant would argue, created a situation where the accused is precluded from producing evidence of a mental infirmity in order to attack the Government's burden of proving that the defendant possesses the required mens rea. Had the IDRA done so it would be unconstitutional. Again, the legislative history supports the Court's conclusion.

After describing that provision of the IDRA that prohibits the creation of affirmative defenses based on mental abnormalities other than insanity, the House Report states:

Mental disorders will remain relevant, of course, to the issue of the existence of a mental state required for the offense, such as the specific intent required for certain crimes. This accords with current practice.

H.R.Rep. No. 98–577, 98th Cong., 1st Sess. 14, *quoted in Pohlot,* 827 F.2d at 898. The report goes on:

Under [the diminished capacity] doctrine, a defendant could escape responsibility for a crime by demonstrating not that he or she lacked a required specific intent, but rather that his or her capability [to form] that intent was not, because of mental disorder, commensurate with that of nondisordered persons.

*Id.* at 15 n. 24, *quoted in Pohlot,* 827 F.2d at 898.

There is absolutely no indication that Congress intended to bar evidence of mental abnormality to prove a lack of mens rea. The use of expert psychiatric testimony to disprove an element of the crime is "entirely distinct from the use of such testimony

4. Since the Defendant has not provided a careful analysis of his position, the Court is left with the task of piecing together his argument. While the Court assumes that the Defendant's argument is premised on a belief that the IDRA does not allow for the "affirmative defense" of diminished capacity, it is not altogether clear that such a claim ever constituted an affirmative defense. The defense is more a rule of evidence going to the introduction of facts needed to negate mens rea, than strictly a criminal defense. *See, Pohlot,* 827 F.2d at 897; *see also* note 3 supra.

5. In his motion, the Defendant does not specifically state that he is raising a fifth amendment due process challenge to the IDRA. Rather, he merely indicates that the Act violates "Due Process of Law." Again the Court is left to fill in the gap.

Since the IDRA applies only to federal defendants, *Pohlot,* 827 F.2d at 898, it is the fifth amendment due process clause which is applicable. In numerous opinions the Supreme Court has stated that the fifth amendment's due process clause is to be applied when the alleged deprivation is the result of federal action. *E.g., Davis v. Passman,* 442 U.S. 228, 234, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1978).

to relieve a defendant of criminal responsibility based on the insanity defense...." *Pohlot*, 827 F.2d at 897, *quoting United States v. Demma*, 523 F.2d 981, 986 n. 14 (9th Cir.1975).

■ Due process requires that the Government be able to prove every element of the charged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). If one of the elements of the charged crime requires proof of specific intent, then the defendant must be given the opportunity to disprove the government's contention.

Section 17(a) of the IDRA does not prevent a defendant from introducing evidence that tends to negate the mens rea element of the charged crime. It only purports to limit those instances in which evidence of mental abnormalities will constitute an affirmative defense.

Through the IDRA Congress desired to preclude only psychiatric evidence that tends towards "exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection." *Pohlot*, 827 F.2d at 890. Therefore, when the Defendant argues that the IDRA prevents him from introducing evidence that his client lacks the ability to form the necessary mens rea he is simply wrong.

## IV.

ACCORDINGLY, the constitutional challenge to the IDRA is DENIED.

IT IS SO ORDERED.