**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4142
_____

UNITED STATES OF AMERICA

v.

CAROLYN WALL, a/k/a Aorolyn Wald, a/k/a Oarolyn Wald,
a/k/a Oarolyn Wall, a/k/a Oarolyn Wale

Carolyn Wall,
                                    Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(No. 1-11-cr-00046-001)
District Judge: Hon. Sue L. Robinson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 23, 2014

Before: FUENTES, GREENBERG, and COWEN, *Circuit Judges*

(Filed:  November 24, 2014)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*:

Carolyn Wall was charged with thirty counts of fraud and identity theft. Prior to trial, she filed a motion to admit expert testimony from a psychologist bearing on duress and mens rea. The District Court conditionally granted the motion as to duress, but denied it as to mens rea. Wall was later convicted by a jury on all counts. The sole issue on appeal is whether the District Court erred by excluding Wall's expert from testifying regarding mens rea. Because there was no link between the proffered psychiatric evidence and Walls's specific intent to defraud, we affirm.

I.

From July 2010 through March 2011, a number of fraudulent checks were presented to stores such as Wal-Mart, Best Buy, and Target across Delaware, Pennsylvania, Maryland, and New Jersey. The New Castle County Police Department connected these incidents to Carolyn Wall and executed two search warrants of her townhouse. During these searches, the police found blank checks; counterfeit checks; documents with names, dates of birth, and Social Security numbers; printouts of bank names, addresses, and routing numbers; and check-writing computer software. Over the course of the nine-month scheme, Wall caused losses of over $100,000.

A grand jury returned a thirty-count indictment charging Wall with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. § 1343; identity theft, in violation of 18 U.S.C. § 1028(a)(7); access device fraud, in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(a)(i); fraudulent use of Social Security

numbers, in violation of 42 U.S.C. § 408(a)(7)(B); and aggravated identity theft, in violation of 18 U.S.C. § 1028A.

Wall has never contested that she engaged in the fraudulent scheme. In fact, in a proffer with the government, she admitted to making fake checks and using other people's Social Security numbers. Her defense, instead, relied primarily on duress. Prior to trial, Wall filed a motion to admit the expert testimony of psychologist Dr. Catherine Barber. According to the motion, Dr. Barber would "present testimonial evidence of the effect that longstanding physical and mental abuse, neglect and manipulation have had on Ms. Wall, which made Ms. Wall a target of coercion by various unindicted family members" and by Shawn Dyton, a man with whom she was romantically involved. (App. 185.) Despite its focus on duress, Wall's motion also mentioned in passing that Dr. Barber's testimony would be used "to negate the mens rea of the charged offenses." (*Id.*)

Dr. Barber's expert report, which was attached to the motion, describes her psychological evaluation of Wall. Dr. Barber concluded that Wall suffers from major depression, anxiety, and Dependent Personality Disorder, which is a "chronic, ingrained, and dysfunctional pattern of both inner experience and relating to others characterized by excessively submissive behavior and passivity." (App. 199.) Wall has a history of sexual, physical, and mental abuse, and she is particularly vulnerable to perceived threats by Dyton. In addition to describing her dependent personality, Dr. Barber found that Wall suffers from "dissociative episodes" and has "transient psychotic features." (App. 198.) For example, Wall explained to Dr. Barber that she "continues to hear voices 'every day,'

which vacillate between a critical, 'demonic' voice and one that is quiet and soothing, 'like my grandmother's.'" (*Id.*)

The District Court held a *Daubert* hearing at which Dr. Barber testified extensively as to her methodology and diagnoses. Like her expert report, much of Dr. Barber's testimony pertained to Wall's Dependent Personality Disorder. Dr. Barber also testified regarding Wall's psychosis. She explained that "throughout her life," Wall has had "transient psychotic features," which include "auditory hallucinations [and] hearing voices." (App. 115.) At the conclusion of the hearing, the District Court ruled that Dr. Barber could testify at trial provided that Wall took the stand and developed her own story and narrative. Immediately after the District Court issued its oral decision, the government sought to clarify the ruling: "My understanding is that the expert would be offered to provide testimony that would support defendant's defense of duress. Certainly, to the extent the testimony is offered regarding mens rea . . . that would be impermissible basis to introduce this testimony." (App. 171.) The District Court confirmed the government's understanding.

At trial, the District Court ultimately excluded Dr. Barber from testifying as to duress because it found that Wall had failed to establish a proper foundation. The jury convicted Wall on all counts.

II.

Wall argues on appeal that the District Court improperly excluded Dr. Barber from testifying as to mens rea.[1]

The Insanity Defense Reform Act of 1984 (the "Act"), 18 U.S.C. § 17, contains a statutory formulation of the insanity defense. Apart from the affirmative defense of insanity, the Act provides that "[m]ental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a). Section 17(a) was intended to "preclude defenses akin to partially diminished capacity or diminished responsibility." *United States v. Pohlot*, 827 F.2d 889, 903 (3d Cir. 1987). However, even following the Act, psychiatric evidence may be used to show that a defendant lacked mens rea. *Id.* at 905; *United States v. Andrews*, 811 F. Supp. 2d 1158, 1170 (E.D. Pa. 2011). Evidence of mental abnormality is admissible to negate mens rea because it is relevant to the determination of whether the government has established the specific intent element of a crime. In contrast to the diminished capacity or diminished responsibility defense, where the defendant's argument is that his or her conduct was excused or justified, evidence negating mens rea is admissible because the argument is simply "not guilty."

Psychiatric evidence regarding mens rea is appropriate "when such evidence focuses on the defendant's specific state of mind at the time of the charged offense."

---

[1] The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to review the District Court's judgment of conviction pursuant to 28 U.S.C. § 1291. We review a district court's decision to admit or exclude expert testimony for abuse of discretion. *United States v. Walker*, 657 F.3d 160, 175 (3d Cir. 2011).

*United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990). In deciding whether to permit expert testimony, courts focus on the link or relationship between the specific psychiatric evidence offered and the mens rea at issue in the case. *Andrews*, 811 F. Supp. 2d at 1170. Despite finding that the Act at least in theory permits such evidence, this Court has warned against the "strong danger of misuse" of mental health evidence and explained that "[o]nly in the rare case . . . will even a legally insane defendant actually lack the requisite mens rea purely because of mental defect." *Pohlot*, 827 F.2d at 900, 905; *see also United States v. Mezvinsky*, 206 F. Supp. 2d 661, 664 (E.D. Pa. 2002). Indeed, even "a man who commits murder because he feels compelled by demons still possesses the mens rea required for murder." *Pohlot*, 827 F.2d at 900. This is so because purposeful activity is all the law requires. *Id.* at 907.

Dr. Barber offered no link between the psychiatric evidence and Wall's intent to defraud. This is not surprising because Dr. Barber's report focused almost entirely on Wall's vulnerability to coercion as opposed to her psychosis.[2] Dr. Barber stated that Wall has transient psychotic symptoms, she hallucinates, and she hears voices. Dr. Barber did not, however, opine that Wall was actually suffering from psychosis at the times she committed the fraudulent acts. Moreover, Dr. Barber did not provide any explanation as to how Wall's psychosis negated her intent to create fake checks, use check-making software, obtain other people's Social Security numbers, or otherwise carry out the

---

[2] In fact, the government maintains that Wall waived her mens rea argument by not presenting it to the District Court. Although we find some appeal to the government's position, we choose to dispose of this case on the merits of Wall's argument.

fraudulent scheme. There was no suggestion in Dr. Barber's proffered testimony that Wall's illicit activities were not purposeful. To the contrary, Dr. Barber's focus on duress assumes that Wall had specific intent, but that she was coerced into committing the fraud. In light of the complexity and duration of Wall's scheme, it was not an abuse of discretion for the District Court to preclude Dr. Barber from testifying as to mens rea.[3]

### III.

For the foregoing reasons, we affirm Wall's judgment of conviction.

---

[3] Wall contends that the District Court committed legal error by adopting the position that, short of insanity, expert testimony on mens rea is always inadmissible. The District Court, however, did not make such a sweeping ruling. Rather, based on the facts of this case, it found that Dr. Barber could not testify as to Wall's specific intent.