IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 15, 2019 Session

## STATE OF TENNESSEE v. BECKY JO BURLISON

**Appeal from the Criminal Court for Davidson County**
**No. 2014-D-3015     Monte Watkins, Judge**

_____

### No. M2019-00148-CCA-R9-CD

_____

In June 2015, a Davidson County Criminal Court jury convicted the Defendant, Becky Jo Burlison, of two counts of aggravated rape of a child, one count of aggravated child abuse, and one count of aggravated child neglect. Later, the trial court granted the Defendant's motion for new trial on grounds that she had been deprived of the effective assistance of counsel. Prior to the new trial, the Defendant provided notice that she intended to offer expert testimony of her diminished capacity at the time of the offenses. The State moved to exclude the testimony, arguing that the testimony was not admissible because it did not satisfy the requirements established in *State v. Hall*, 958 S.W.2d 679 (Tenn. 1997). Following a hearing, the trial court denied the State's motion and deemed the testimony admissible. The trial court and this court granted the State's application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 9. In this interlocutory appeal, the State challenges the trial court's denial of its motion to exclude expert testimony regarding the Defendant's mental state at the time of the alleged offenses, reiterating the claim that the evidence does not satisfy the requirements for admission. Because we agree that the proffered evidence does not satisfy the requirements for admission established by *Hall* and its progeny, we reverse the ruling of the trial court and remand the case for further proceedings consistent with this opinion.

**Tenn. R. App. P. 9; Judgment of the Criminal Court Reversed; Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellant, State of Tennessee.

Mark C. Scruggs, Nashville, Tennessee, for the appellee, Becky Jo Burlison.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

In 2014, the Davidson County Grand Jury charged the Defendant with two counts of aggravated rape of a child, one count of aggravated child abuse, and one count of aggravated child neglect based upon acts committed against the two-year-old victim on April 13, 2012. The case first went to trial in June 2015. The evidence adduced at that trial established that the Defendant, a family friend, was babysitting the victim when she noticed that he was behaving as though he was constipated. The Defendant claimed that she treated the victim with a laxative and with a children's enema. When neither treatment produced a bowel movement, the Defendant inserted the rubber handle of a hairbrush into the victim's rectum, ostensibly to provide the victim relief from impacted stool. When the Defendant inserted the hairbrush a second time, the handle came off inside the victim's rectum, and the Defendant was unable to retrieve it. Instead of telephoning an ambulance or driving the victim to the hospital herself, the Defendant telephoned her husband and waited until her husband arrived to take the victim to the hospital. At the conclusion of the trial, the jury convicted the Defendant as charged.

The Defendant filed a timely motion for new trial, alleging, among other things, that she was deprived of the effective assistance of counsel at trial by her counsel's failure to request a pretrial forensic evaluation and by his failure to timely notify the court of the Defendant's intent to offer the testimony of a mental health expert. The trial court granted the Defendant's motion for new trial based upon its conclusions that counsel had performed deficiently and that the Defendant was prejudiced by the deficient performance. Specifically, the trial court concluded that counsel "delayed in securing a mental health expert evaluation," "failed to file a timely notice of intention to introduce a medical expert," failed to provide the Defendant's previous mental health records to the doctor who eventually conducted the evaluation, and failed to ask that doctor to "evaluate the Defendant for diminished mental capacity or insanity at the time of the event." The State asked permission to seek interlocutory review of the court's order granting the new trial via Tennessee Rule of Appellate Procedure 9, but the trial court denied the motion.

In January 2018, the Defendant moved the trial court to provide a jury instruction on the defense of "medical necessity." The trial court denied the motion but granted the Defendant's application for permission to pursue an interlocutory appeal to this court. This court, however, denied the Defendant's application, finding that the Defendant had failed to satisfy the requirements for interlocutory appeal. *See State v. Becky Jo Burlison*, No. M2018-00356-CCA-R9-CD (Tenn. Crim. App., Nashville, Apr. 9, 2018) (Order), *perm. app. denied* (Tenn. July 18, 2018).

In September 2018, the Defendant filed notice that she intended to rely on the testimony of Dr. Keith Caruso to establish that, at the time of the offense, she "lacked the capacity because of her mental disease or defect to either intentionally, knowingly[,] or recklessly distinguish between *lawful* versus *unlawful* sexual penetration as prohibited by T.C.A. § 39-13-522(a) and 39-13-501(7)" and "lacked the capacity because of her mental disease or defect to either intentionally, knowingly[,] or recklessly determine what was immediately necessary to avoid imminent harm and apply necessary medical treatment to the child victim in accordance with ordinary standards of reasonableness." The Defendant exhibited to her notice a letter from Dr. Caruso to defense counsel and a copy of a report prepared by Dr. Caruso in September of 2018.

In the letter, Dr. Caruso stated, "[I]t is my opinion to a reasonable degree of medical certainty that [the Defendant's] actions could best be described as negligent." In his report, Dr. Caruso stated that, at the time of the alleged offenses, the Defendant suffered from "Schizoaffective Disorder, Bipolar Type, multiple episodes" and "acute episode Opioid Intoxication." He opined that the Defendant was competent to stand trial and that she did not meet the criteria for an insanity defense because "[h]er severe mental disease did not prevent her from appreciating the nature of her actions, as she acknowledged seeking to disimpact [the victim's] stool from his rectum by inserting a hairbrush handle." He explained, "She did not believe that she was acting wrongfully, but instead believed that her actions were necessary in order to treat [the victim's] constipation. This belief, however misinformed, was not the product of psychosis." Dr. Caruso found that the Defendant "was suffering from manic symptoms at the time of the alleged offenses, including distractibility, impulsivity, heightened activity and irritability" and that she "was intoxicated at the time of the alleged offenses." He concluded that, "[a]s a result, she was impatient and acted impulsively, pursuing a very ill advised course of action with" the victim. Dr. Caruso also concluded, however, that "although [the Defendant] suffered from a severe mental disease at the time of the alleged offenses . . . and was suffering from manic symptoms in her account, this did not prevent her from knowingly or recklessly penetrating [the victim's] rectum with a hairbrush handle . . . in accordance with criteria in *State v Hall*." He did conclude that "her severe mental disease and intoxication prevented her from recognizing ordinary standards of reasonableness at the time of the alleged offenses."

The State moved the trial court to exclude Dr. Caruso's testimony on grounds that he had concluded that an insanity defense could not be supported and that the Defendant's severe mental disease did not prevent her from acting knowingly or recklessly. The State also argued that Dr. Caruso should not be permitted to testify that it was his opinion that the Defendant's "'actions could best be described as negligent.'"

In her response to the State's motion, the Defendant conceded that "[t]here is no

question that" her actions met the statutory definition of sexual penetration and that Dr. Caruso had confirmed that she "acted either intentionally, knowingly or recklessly in engaging in the penetration of the victim" but nevertheless argued that the evidence in this case established that she had "acted out of what she perceived to be a 'medical necessity,' or in the absence of such an instruction, a necessity in inserting the brush handle into the child-victim's anus." She asserted that Dr. Caruso's opinion addressed the questions "whether the Defendant's mental defect(s) . . . prevented her from identifying whether the technique she employed to relieve the victim's constipation was 'lawful'" and whether her "mental defects" also impacted "her belief that a necessity existed."

Dr. Caruso was the only witness presented at the hearing on the State's motion to exclude. Both his letter to defense counsel and his September 2018 report were exhibited to his testimony at the hearing.

During direct examination, Dr. Caruso testified that he had reviewed a variety of materials, all of which established that the Defendant "had a long history of mental illness." He also interviewed the Defendant more than once and interviewed her husband, daughters, mother, and two family friends. Based upon his review of the materials and the information gleaned during the interviews, Dr. Caruso diagnosed the Defendant with "schizoaffective disorder, bipolar-type." He concluded that the Defendant "appeared to be in a manic episode at the time of the alleged offense" and that she was "intoxicated on opioids at the time of the offense as well." It was his opinion that the Defendant's "manic episode" "caused her to be too impatient to wait for the Miralax or the enema to work, and . . . caused her to act impulsively" and that her mania "also interfered with her ability to recognize ordinary standards of reasonableness." Dr. Caruso added that "essentially there's some knowledge gained I guess from speaking with a pediatrician, but also I think that, you know, she believed, her account was that she believed that what she did was necessary to relieve his suffering at that time." When asked to characterize the Defendant's "mental state as related to her ability to recognize whether or not her actions were lawful versus unlawful," Dr. Caruso stated that

> there was both a knowledge deficit, in terms of she had information from the pediatrician that this would be an appropriate thing, but also I think her manic state caused her to be somewhat grandiose to assume that it was okay for her, as a layperson, to go ahead and do this, and that -- it also impaired her ability to recognize the ordinary standards of reasonableness about whether or not a hairbrush would be an appropriate substitute for a finger or for a rectal thermometer.

During cross-examination by the State, Dr. Caruso agreed that the Defendant's

"knowledge deficit and manic state caused her to assume that it was okay to do this." When asked whether it was his opinion that the Defendant "lacked the capacity to recognize whether or not it was appropriate," he said, "I think the best way I can describe it is that her manic state caused her to behave in this way and caused her to be more impulsive." Dr. Caruso opined that the Defendant's mental disease "did not prevent her from acting knowingly or recklessly" and agreed that he could not "here today state that she lacked the capacity" to form a knowing or reckless mental state. It was his opinion that the Defendant was able to appreciate both the wrongfulness of her actions and the nature of her actions. He agreed that the Defendant's actions indicated "that she was acting recklessly and impulsively."

On redirect examination, Dr. Caruso said that the Defendant's "manic state, as a result of schizoaffective disorder," caused her to view her actions "as a necessity at the time" instead of "sexual penetration. She saw it as relieving the child's constipation." He clarified on recross-examination that the Defendant "inaccurately believed that this was something that would be indicated for her to do, so she had a knowledge deficit that was independent of her mental state. . . . It was independent of any psychotic disorder." He opined that the Defendant's mental state "impaired" her ability to appreciate the wrongfulness of her actions "because part of it, part of her perceiving that she was not acting wrongfully was based on . . . information" instead of "psychosis." He added, "And then she was more prone to behave in this fashion because she was grandiose, she overestimated, you know, what would be indicated for someone like her to do." Dr. Caruso again agreed that the Defendant's mental disease "did not cause her to lack the capacity to form the requisite mens rea," but he said that "there was impairment and it did impact upon her acting in that way." He reiterated that he could not state with a reasonable degree of medical certainty that the Defendant lacked the capacity to form the necessary mens rea.

In a written order denying the State's motion to exclude Dr. Caruso's testimony, the trial court found that Dr. Caruso was qualified as an expert witness, and his testimony at trial was permissible. The court concluded, with very little analysis, that Dr. Caruso's testimony complied with the requirements of both *State v. Hall*, 958 S.W.2d 679 (Tenn. 1997), and *State v. Shuck*, 953 S.W.2d 662 (Tenn. 1997). The court observed, "At the evidentiary hearing, Dr. Caruso testified that the Defendant did not believe that she was acting wrongfully, but instead believed that her actions were necessary. Her severe mental disease and intoxication prevented her from recognizing ordinary standards of reasonableness at the time of the offense." Following the trial court's ruling, the State moved the trial court for permission to pursue an interlocutory appeal, and the trial court granted the motion. This court then granted the State's application for Rule 9 appeal.

# ANALYSIS

In this appeal, the State asserts that the trial court erred by denying its motion to exclude Dr. Caruso's testimony, arguing that his proffered testimony is inadmissible because he did not testify "unequivocally" that the Defendant's mental disease or defect prevented her from forming the necessary mens rea for the charged offense. The Defendant contends that the trial court did not err because "Dr. Caruso's testimony addresses the Defendant's mental state in relation to her ability to determine lawful versus unlawful sexual penetration and what she believed was a necessary procedure to relieve the child of his pain."

In *State v. Hall*, our supreme court held that, because "the general criminal law requires that mental state be proven by the State beyond a reasonable doubt," "evidence which tends to prove or disprove the required mental state is relevant and generally admissible under Tennessee law." *State v. Hall*, 958 S.W.2d 679, 689 (Tenn. 1997). That being said, "expert testimony regarding a defendant's incapacity to form the required mental state must satisfy the general relevancy standards as well as the evidentiary rules which specifically govern expert testimony." *Id.* "Assuming that those standards are satisfied, psychiatric evidence that the defendant lacks the capacity, because of mental disease or defect, to form the requisite culpable mental state to commit the offense charged is admissible under Tennessee law." *Id.* The supreme court "emphasize[d] that the psychiatric testimony must demonstrate that the defendant's inability to form the requisite culpable mental state was the product of a mental disease or defect, not just a particular emotional state or mental condition," stating, "[i]t is the showing of a lack of capacity to form the requisite culpable mental intent that is central to evaluating the admissibility of expert psychiatric testimony on the issue." *Id.* at 690 (citing *State v. Shelton*, 854 S.W.2d 116, 122 (Tenn. Crim. App. 1992). Although the court expanded the holding in *Hall* to encompass testimony from experts other than psychiatrists, the court has consistently held "that '[e]vidence that the defendant suffered from a mental disease or defect'" is only "'admissible whenever it is relevant to prove that the defendant did or did not have the state of mind which is an element of the offense.'" *State v. Ferrell*, 277 S.W.3d 372, 379 (Tenn. 2009) (quoting *Hall*, 958 S.W.2d at 690 n.9); *see also Nesbit v. State*, 452 S.W.3d 779, 798 (Tenn. 2014); *State v. Adams*, 405 S.W.3d 641, 661 (Tenn. 2013); *State v. Hatcher*, 310 S.W.3d 788, 806 (Tenn. 2010). These cases, as well as the myriad cases of the same ilk decided by this court, clearly establish that expert testimony on the issue of diminished capacity is admissible only when it demonstrates that the defendant "lacked the capacity" to form the requisite mens rea for the charged offense.

In this case, the Defendant was charged with aggravated rape of a child, aggravated child abuse, and aggravated child neglect. "Aggravated rape of a child is the

unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is three (3) years of age or less." T.C.A. § 39-13-531(a).[1] Our supreme court has explained that the offense of rape of a child may be separated into two elements, which elements also apply to the offense of aggravated rape of a child: "unlawful sexual penetration" and the age of the child. *State v. Clark*, 452 S.W.3d 268, 296 (Tenn. 2014). Because the Code does not supply a mens rea for either element, "the generic mens rea statute fills in the gap." *Id.* "Because the act of sexual penetration relates to the result of the defendant's conduct," the element of "unlawful sexual penetration may be done intentionally, knowingly, or recklessly." *Id.* (citation and footnote omitted). Similarly, "a defendant may satisfy" the element related to the age of the child victim "when he or she is reckless, knowing, or intentional regarding the attendant circumstance of the age of the victim." *Id.* at 297 (citation omitted).

At the time of the offenses in this case, Tennessee Code Annotated section 39-15-401 provided:

> (a) Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury commits a Class A misdemeanor; provided, however, that, if the abused child is eight (8) years of age or less, the penalty is a Class D felony.
>
> (b) Any person who knowingly abuses or neglects a child under eighteen (18) years of age, so as to adversely affect the child's health and welfare, commits a Class A misdemeanor; provided, that, if the abused or neglected child is eight (8) years of age or less, the penalty is a Class E felony.

T.C.A. § 39-15-401(a)-(b). As charged in this case, aggravated child abuse or aggravated child neglect is child abuse or neglect as defined above when a "dangerous instrumentality . . . is used to accomplish the act of abuse [or] neglect." T.C.A. § 39-15-402(a)(2).

Our supreme court has recognized that

---

[1] At this juncture, we note that the cover page of the indictment, all of the pleadings, and the judgment forms from the Defendant's first trial all indicate that the Defendant was charged with "aggravated rape of a child." All those documents, however, contain citations to Tennessee Code Annotated section 39-13-522, which defines the offense of rape of a child: "Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). The offense of aggravated rape of a child is defined in section 39-13-531. That being said, the language of the indictment tracks the statutory language in section 39-13-531, and the record clearly establishes that the Defendant had actual notice of the offenses charged against her.

Tennessee's child abuse and neglect statute may be broken down into two classifications, abuse and neglect, each of which have both a conduct and a result element. Child abuse requires that: (1) a person knowingly "treat in such a manner" a child under eighteen years of age; and (2) the child sustains an injury. Child neglect requires that: (1) a person knowingly neglect a child under eighteen years of age; and (2) the child's health and welfare are adversely affected.

*State v. Ducker*, 27 S.W.3d 889, 896 (Tenn. 2000). "[T]he statute requires that the act of treating a child in an abusive manner or neglecting the child must be knowing conduct." *Id.* at 897.

Here, Dr. Caruso testified that the Defendant suffered from schizoaffective disorder, bipolar type and that she self-reported her intoxication on opioids at the time of the alleged offenses. He stated that the Defendant was in a manic state at the time she committed the acts against the victim and that her mania led her to be impatient and impulsive. He opined that her intoxication contributed to her impulsivity. He did not, however, testify that the Defendant lacked the capacity to act either intentionally, knowingly, or recklessly. Instead, he testified that the Defendant's mental disease in combination with her "knowledge deficit" "contributed or impaired" her ability to appreciate the wrongfulness of her actions.

"It is well established that a mental disease or defect that impairs or reduces a defendant's capacity to form the requisite culpable mental state for the offense does not satisfy the two–prong test under *Hall*." *State v. Lesergio Duran Wilson*, No. M2014-01487-CCA-R9-CD, 2015 WL 5170970, at *12 (Tenn. Crim. App. Sept. 2, 2015) (citing *State v. Tray Dontacc Chaney*, No. W2013-00914-CCA-R9-CD, 2014 WL 2016655, at *9 (Tenn. Crim. App. May 14, 2014); *State v. Herbert Michael Merritt*, No. E2011-01348-CCA-R3-CD, 2013 WL 1189092, at *27 (Tenn. Crim. App. Mar. 22, 2013); *State v. Anthony Poole*, No. W2007-00447-CCA-R3-CD, 2009 WL 1025868, at *11 (Tenn. Crim. App. Apr. 14, 2009); *State v. Antonio D. Idellfonso-Diaz*, No. M2006-00203-CCA-R9-CD, 2006 WL 3093207, at *4 (Tenn. Crim. App. Nov. 1, 2006)). In *Lesergio Duran Wilson*, this court determined that testimony proffered by two defense experts did not satisfy the admission requirements established in *Hall* because neither expert could "conclusively testify that Wilson lacked the capacity to premeditate or act intentionally at the time of the killing." *Lesergio Duran Wilson*, 2015 WL 5170970, at *13. Similarly, in *Tray Dontacc Chaney*, this court concluded that the trial court erred by admitting expert testimony on the issue of diminished capacity when the defense expert testified "that the defendant's 'psychological problems coupled with the stressors at that point impacted, eroded his capacity to premeditate'" but "'acknowledged that he did not conclude that the defendant's capacity to do so 'was completely eroded.'" *Tray Dontacc*

*Chaney*, 2014 WL 2016655, at *9. In *Herbert Michael Merritt*, we determined that the trial court properly excluded evidence that "merely indicated that Defendant's mental disease or defect impaired or reduced his capacity to form the requisite mental state and therefore, did not satisfy the two-prong requirement of *Hall* and *Faulkner*." *Herbert Michael Merritt*, 2013 WL 1189092, at *27. Additionally, in *Antonio D. Idellfonso-Diaz*, we confirmed that "[t]he fact that the appellee's mental disease impaired or reduced his capacity to form the requisite mental state does not satisfy the two-prong requirement in *Hall* and *Faulkner*." *Antonio D. Idellfonso-Diaz*, 2006 WL 3093207, at *4.

Dr. Caruso did not testify that, as a result of the Defendant's mental disease or defect, she lacked the capacity to form the requisite mens rea for the charged offenses. Instead, he testified that the Defendant's manic state, a feature of her mental disease, combined with what he termed "knowledge deficit" apparently attributable to medical advice she had previously received, led her to penetrate the victim's rectum with the handle of a hairbrush because she believed it was necessary at the time. This testimony is more akin to testimony about "'a particular emotional state or mental condition' rather than on Defendant's 'lack of capacity to form the requisite culpable mental intent.'" *Hatcher*, 310 S.W.3d at 807 (quoting *Hall*, 958 S.W.2d at 690). Consequently, Dr. Caruso's testimony did not satisfy the requirements in *Hall*, and the trial court should have excluded the testimony.

The Defendant also argues, as she did in the trial court, that "Dr. Caruso's testimony addressed the Defendant's mental state in relation to her ability to determine lawful versus unlawful sexual penetration and what she believed was a necessary procedure to relieve the pain of the child." Both in the trial court and in her appellate brief, the Defendant conflates the issue of diminished capacity, which is a rule of evidence, and the defense of necessity, which operates to justify the commission of a crime. The defense of necessity justifies the commission of a criminal act when :

(1) The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and

(2) The desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

T.C.A. § 39-11-609. The defense of necessity "excuses criminal liability in those exceedingly rare situations where criminal activity is an objectively reasonable response to an extreme situation," and is available only when "the defendant acts upon a reasonable belief that the action is necessary to avoid harm" and "the harm sought to be avoided is clearly greater than the harm caused by the criminal act." *Id.*, Advisory

Comm'n Comments.

In contrast, "diminished capacity is never used as a justification or an excuse for a crime. Rather, it is an attempt to prove that the defendant, incapable of the requisite intent of the crime charged, is innocent of that crime but may well be guilty of a lesser one." *State v. Phipps*, 883 S.W.2d 138, 143 (Tenn. Crim. App. 1994) (*United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)). It is well-settled that "the defendant's conduct and mental state must meet an objective standard of reasonableness for the conduct to be justified under" the defense of necessity because that defense "not only entail[s] what a defendant actually believes, but include[s], as well, what is a reasonable belief under the circumstances." *State v. Bult*, 989 S.W.2d 730, 732 (Tenn. Crim. App. 1998). The general policy behind the defense of necessity contemplates a judgment that an individual acting under conditions that "'*a person of ordinary firmness* would have been unable to resist or reasonably believing that criminal action was necessary to avoid a harm more serious than that sought to be prevented by the statute defining the offense does not deserve criminal punishment.'" *State v. Brandon Cole-Pugh*, ___ S.W.3d ___, No. W2017-00469-SC-R11-CD, 2019 WL 5485627, at *5 (Tenn. Oct. 25, 2019) (quoting W. Mark Ward, *Tenn. Crim. Trial Practice* § 23:16 (Oct. 2018 update)) (emphasis added). "Thus, the mere fact that the defendant believes that his conduct is justified would not suffice to justify his conduct" under the defense of necessity. *Bult*, 989 S.W.2d at 732. Because the defense of necessity requires an evaluation of the circumstances from the view of "a person of ordinary firmness," Dr. Caruso's testimony would not be relevant to the question whether the Defendant acted out of necessity.

This court considered a similar issue in *State v. Stacy Dewayne Ramsey*. In that case, the defendant, who had been diagnosed with dependent personality disorder and a low IQ, moved the trial court to instruct the jury

> that as to the defense of duress, the duress must generally be actual and existing at the times alleged. However, even if such duress was not actually existing, the defendant has the right to rely upon the defense of duress if such actions by another are reasonably perceived by the defendant to amount to duress, having in mind the defendant's diminished capacity, if any you should find.

*State v. Stacy Dewayne Ramsey*, No. 01C01-9412CC00408, 1998 WL 255576, at *17 (Tenn. Crim. App. May 19, 1998). The defendant also moved the court to provide a second special instruction regarding the impact of his diminished capacity on the defense of duress:

> Because of his diminished capacity, a person may have been mistaken

-10-

based upon his perception of the circumstances as to the extent of his actual duress. But if he acts under duress from honest, even though mistaken, conviction as to the extent of danger to him, he will not be held criminally liable for his actions.

*Id.* at \*17. This court concluded that the trial court did not err by refusing to provide either instruction because "the defendant's state of mind is irrelevant to the defense of duress." *Id.* at \*18. We noted that "the defendant's mental state is not an element of the defense under the statute" and that "[t]he defense of duress is not supported by evidence that the defendant was mistaken as to the circumstances due to his diminished capacity." *Id.* As between the defenses of duress and necessity, "one primary difference" exists: "the defense of duress requires that the 'threatened harm must be . . . one from which the person cannot withdraw in safety.'" *Brandon Cole-Pugh*, 2019 WL 5485627, at \*7. "[O]ne commonality between the two defenses remains: '[u]nder any definition of these defenses . . .[,] if there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defenses will fail.'" *Id.* (quoting *United States v. Bailey*, 444 U.S. 394, 410 (1980) (internal quotation marks omitted)). Because the defense of necessity, like the defense of duress, turns upon "ordinary standards of reasonableness," diminished capacity evidence would not be admissible to show that the defendant acted out of necessity.

The expert testimony offered by the Defendant did not satisfy the requirements for admission established in *State v. Hall*. In consequence, the trial court erred by denying the State's motion to exclude that testimony. Accordingly, we reverse the judgment of the trial court denying the State's motion to exclude and remand the case for further proceedings consistent with this opinion.

---

JOHN EVERETT WILLIAMS, PRESIDING JUDGE

-11-